5 F.Supp.2d 712 (1997)
CAVALIER HOMES OF ALABAMA, INC., Plaintiff,
v.
SECURITY PACIFIC HOUSING SERVICES, INC.; Bank of America, F.S.B.; Bank of America, N.T. & S.A.; and BankAmerica Corporation, Defendants.
No. 1:96CV00059 ERW.
United States District Court, E.D. Missouri, Southeastern Division.
May 14, 1997.
*713 Donald L. James, Brown and James, P.C., St. Louis, MO, Mayer S. Klein, John E. Toma, Jr., Newman and Goldfarb, Clayton, MO, for Cavalier Homes of Alabama, Inc.
Harry B. Wilson, Husch and Eppenberger, St. Louis, MO, Tom K. O'Loughlin, II, O'Loughlin and O'Loughlin, Cape Girardeau, MO, for Security Pacific Housing Services, Inc., Bank of America, F.S.B., Bank of America, N.T., BankAmerica Corp.
*714 John D. Harding, Limbaugh and Russell, Cape Girardeau, MO, for James R. Sides, Morris C. Montgomery, Betty Montgomery and Morris Charles Montgomery.
Mayer S. Klein, John E. Toma, Jr., Newman and Goldfarb, Clayton, MO, for Cavalier Homes of Alabama, Inc.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter is before the Court on defendants' motion for more definite statement [document # 7], motion to strike certain portions of plaintiff's complaint [document # 27], motion to strike claims for lost profits [document # 45], motion for judgment on the pleadings [document # 48], and on plaintiff's motion to dismiss Counts II and III or to stay count III of defendants' amended counterclaim [document # 18], and several motions to quash defendants' subpoenas to nonparties [documents # 28, # 29, # 30, # 31, # 32, # 33, # 34, # 35, # 36, and # 37].
Plaintiff Cavalier Homes of Alabama, Inc. (Cavalier) brought this four-count complaint against Security Pacific Housing Services, Inc. (Security Pacific), Bank of America, F.S.B., Bank of America, N.T. & S.A., and BankAmerica Corporation (the BOA Defendants). The BOA Defendants are named as successors in interest to Security Pacific Bank, N.A., the original parent company of Security Pacific. Plaintiff alleges that Security Pacific is liable for breach of contract (Counts I and II), tortious interference with its reasonable business expectancy (Count III), and fraud (Count IV). Defendants have asserted three counterclaims. The first is for breach of contract, and the second and third are declaratory judgment claims.
The Court will first address defendants' motion for judgment on the pleadings. "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R.Civ.P. 12(c). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that movant is entitled to judgment as a matter of law. National Car Rental System, Inc. v. Computer Assoc. Int'l, Inc., 991 F.2d 426, 428 (8th Cir.1993) (citing Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL  CIO, 627 F.2d 853, 855 (8th Cir.1980)).
The Court must accept all facts pled by the non-moving party as true and grant all reasonable inferences from the pleadings in the non-moving party's favor. Id.; Quality Mercury, Inc. v. Ford Motor Co., 542 F.2d 466, 468 (8th Cir.1976), cert. denied, 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977). The grant of a motion for judgment on the pleadings constitutes final judgment on the merits of the controversy within the meaning of Rule 54 of the Federal Rules of Civil Procedure. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1372 (1990). Judgment on the pleadings cannot be granted if any material issue cannot be resolved on the pleadings. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 883 F.2d 1429 (9th Cir.1989); National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357 (7th Cir.1987).
No party has submitted any documents beyond the pleadings in support of its arguments that the Court will consider. Nor can the Court find anything in defendants' statute of frauds challenge to plaintiff's claims which would require the Court to look beyond the pleadings. The Court will therefore dispose of the present motion solely in the posture of a Rule 12(c) motion for judgment on the pleadings, rather than in the posture of a converted motion for summary judgment. Skyberg v. United Food and Commercial Workers Int'l Union, AFL  CIO, 5 F.3d 297, 302 n. 2 (8th Cir.1993).
Defendants move for judgment on the pleadings with respect to all of plaintiff's claims asserting that, (1) the claims are based on alleged oral modifications of written contracts and are barred by the statute of frauds, and (2) if they aren't based on oral modifications or statements then defendant Security Pacific had a legal right to act as it did.
The relevant facts, drawn from the amended complaint, are as follows. This action *715 involves three parties: plaintiff Cavalier, defendant Security Pacific, and Cape Mobile Home Mart, Inc. (Cape Mobile). Cavalier is a manufacturer of mobile homes. Cape Mobile was a retail dealer of mobile homes, including those manufactured by Cavalier. Security Pacific was a lender, which loaned money to Cape Mobile to purchase Cavalier's mobile homes. This lending arrangement is commonly referred to as floor-plan financing.
There are three contracts that Security Pacific held with these parties. The first is a contract between Cape Mobile and Security Pacific, known as the Inventory Financing Agreement (Financing Agreement). This agreement provided that Security Pacific would loan the cost of mobile home units to Cape Mobile, and Cape Mobile would repay the loans plus interest when each unit was sold. The second contract was a Manufacturer's Repurchase Agreement (Repurchase Agreement) between Security Pacific and Cavalier. The Repurchase Agreement provided that Cavalier would repurchase any mobile home sold to Cape Mobile on which Security Pacific foreclosed. The third contract is a Letter Memorandum Agreement (Memorandum Agreement) between Cape Mobile and Security Pacific, that provided for the liquidation of the collateral supporting the Financing Agreement.
Cavalier's claims focus on two series of events. The first event was in March 1991, when Security Pacific declared Cape Mobile in default on the financing agreement, accelerated the loan, and notified Cavalier of the default. Security Pacific declared the default because Cape Mobile had sold several mobile homes in which Security Pacific had a security interest, but had not remitted the sale proceeds to Security Pacific. Cavalier alleges that Security Pacific's declaration of default was wrongful because it was motivated by Security Pacific's desire to terminate its relationship with Cape Mobile as part of Security Pacific's departure from the mobile home lending field.
The terms of the Financing Agreement gave Security Pacific the right to declare Cape Mobile in default if it failed to immediately repay any loan for a home that was sold. Under the contract, as soon as a home was sold, the loan money plus interest was due immediately. The contract also gave Security Pacific the right to accelerate the loan under such circumstances of default. The Repurchase Agreement required Security Pacific to give notice to Cavalier of Cape Mobile's default and make a request for repurchase. The Financing Agreement provided that Security Pacific could terminate the contract with Cape Mobile for any reason with 30 days notice.
Both of the written agreements had clauses indicating that the agreements were the entire agreements between the parties and were not modifiable except in writing. The Repurchase Agreement between Cavalier and Security Pacific provides: "This supersedes any prior agreement of the parties and constitutes the entire agreement and may not be modified or amended in any manner except in writing signed by the parties." The Financing Agreement between Security Pacific and Cape Mobile stated: "This agreement represents the entire agreement between the parties and may not be modified or amended except by a writing duly executed by both parties."
Cavalier asserts that Security Pacific's default declaration, the acceleration of the loan and refusal to accept partial payment, and related actions following acceleration were wrongful because Security Pacific made representations or omissions that authorized Cape Mobile to remit late loan payments, so there was no default.
The second event that is the basis of Cavalier's claims is Security Pacific's decision to enforce an August 1, 1991 deadline in the Memorandum Agreement between Security Pacific and Cape Mobile. The Memorandum Agreement gave Cape Mobile a deadline of August 1, 1991, to complete liquidation of its inventory. When the August 1, 1991 deadline came, liquidation was not complete, and Security Pacific enforced its right to replevin. Cavalier claims this decision to enforce the written terms of the Memorandum Agreement constituted fraud because Security Pacific allegedly told Cavalier and Cape Mobile that it would allow liquidation over time and extend the deadline.
*716 Although plaintiff's complaint contains numerous allegations of oral agreements, promises to act, or promises to otherwise forbear on the part of Security Pacific, plaintiff now contends that it's claims are based solely on the written agreements between the parties, and not on any alleged oral representations or agreements. Defendants contend they are entitled to judgment on the pleadings because the written agreements gave Security Pacific the right to do what it did. This requires the Court to determine the rights of the parties under the contracts.
Finding the language of the contracts is unambiguous, the intention of the parties and interpretation of the contract are factors for the Court to determine from the four corners of the contract. Press Machinery Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784 (8th Cir.1984). "According to Missouri law, the court's role is to determine the intention as manifested not by what the parties now say they intended but by the document." Id. In making this inquiry, the Court may consider not only the mere words of the contract but also the surrounding circumstances at the time of contracting and the positions and actions of the parties. Id. at 784-85.
Plaintiff's claim that Security Pacific wrongfully declared Cape Mobile in default fails because plaintiff, in its own petition, plead that Cape Mobile had sold six mobile homes that were subject to Security Pacific's security interest but did not immediately remit the proceeds to Security Pacific as required by the Financing Agreement. Security Pacific's declaration of default was therefore not a breach of the Repurchase Agreement.
Plaintiff claims that a demand of immediate repayment was wrongful because it had not previously been made. This too fails because the contract gave Security Pacific the right to strictly enforce the terms of the Financing Agreement regardless of prior conduct or course of dealing. Plaintiff claims that Security Pacific breached the Repurchase Agreement by failing to use reasonable diligence to collect sums owed by Cape Mobile. This claim fails because Security Pacific used means to collect the amounts due as provided under the Financing Agreement. Further, the only refusal to collect any amount due was a rejection of a conditional tender offer from Cape Mobile. If a tender is not "unconditional and unqualified," it is not valid. Curnutt v. Scott Melvin Transport, Inc., 903 S.W.2d 184, 190 (Mo.App. 1995).
Plaintiff alleges that Security Pacific breached the Repurchase Agreement by failing to give plaintiff proper notice of it's intention to replevin mobile homes from Cape Mobile. The contract calls for notice to the manufacturer if the lender is forced to take actual or constructive possession of the mobile homes. However, the contract does not say the lender must give notice prior to instituting a replevin action. Plaintiff's claim that Security Pacific breached a duty of good faith and fair dealing fails because the actions of Security Pacific were those specifically provided for in the contracts. Defendants point out that the obligation to act in good faith does not prevent Security Pacific from enforcing the legal rights it possessed under the contracts. See Rigby Corp. v. Boatmen's Bank and Trust Co., 713 S.W.2d 517, 535 (Mo.App.1986). "In the name of good faith, a party cannot be required to forgo or surrender a right that he otherwise possesses." Id.
There are no written modifications of the Repurchase agreement or the Financing Agreement, except the Memorandum Agreement. The actions taken by Security Pacific were those allowed under the terms of the two contracts. The Memorandum Agreement, which Cavalier alleges Security Pacific somehow violated by enforcing the August 1, 1991 deadline, was not breached. When the August 1, 1991 deadline came, the liquidation of Cape Mobile's inventory was not complete. Since Cavalier now disclaims any reliance on oral modifications, Security Pacific's actions in enforcing the deadline of the Memorandum Agreement were not fraudulent or tortious. In all the events complained of by plaintiff, Security Pacific's actions were in accordance with the plain meaning of the contracts. Defendants are entitled to judgment on the pleadings as to plaintiff's claims.
*717 Additionally, even though plaintiff states it is suing strictly on the written contracts, and now claims no reliance on oral representations or modifications, the complaint is rife with them. Plaintiff's disclaimer notwithstanding, the Court will now address the complaint as it stands with the alleged oral modifications and representations. Although this may appear redundant, the Court feels it is necessary since plaintiff is seemingly attempting to proceed with and without the oral representations or modifications as a basis for this action.
In their motion for judgment on the pleadings, defendants argue that if plaintiff alleges its claims based on these oral modifications, its claims are barred by the statute of frauds. The Court agrees. The Missouri statute of frauds governing credit agreements is Mo. Rev.Stat. § 432.045.1-.2. The statute prohibits a debtor from maintaining an action on or defense to a credit agreement unless the agreement is in writing. See Mo.Rev.Stat. § 432.045.2. A credit agreement is defined as "an agreement to lend or forbear repayment of money, to otherwise extent credit, or to make any other financial accommodation." Mo.Rev.Stat. § 432.045.1.
Plaintiff attempts to escape the statute of frauds on several grounds. First, plaintiff alleges that the Repurchase agreement is not a credit agreement under the statute. This argument lacks merit because it is clear in plaintiff's petition that Security Pacific advanced the purchase price of mobile homes directly to Cavalier, and in turn Cavalier agreed to pay back the money for any mobile homes repossessed or those returned from any dealer in default. Under Missouri rules of statutory construction, "Words standing alone are to be interpreted according to their ordinary meaning". St. Louis Country Club v. Administrative Hearing Comm'n of Mo., 657 S.W.2d 614, 617 (Mo. 1983) (citation omitted). The pleadings show that Security Pacific advanced funds to Cavalier, and that Cavalier in turn assumed the responsibility to pay it back if a dealer defaulted. This established a debtor/creditor relationship. This is an extension of credit, or at least a financial accommodation as defined in the statute. The Court finds that these Agreements comprise the written credit agreements between the parties under § 432.045. As plaintiff states in its complaint and arguments here, these documents refer to each other and are also clearly related to each other as integral parts of the parties' financing arrangement. Under Missouri law, several documents in combination may supply the essential terms of a contract, where the documents refer to each other or their contents show they are clearly related. See Smith v. International Paper Co., 87 F.3d 245, 247 (8th Cir.1996) (discussing requirements of a writing to satisfy Missouri statute of frauds); Vess Beverages, Inc. v. Paddington Corp., 941 F.2d 651, 654 (8th Cir.1991).
Plaintiff next responds that the statute does not apply because the contracts do not contain the notice required by the statute. Under § 432.045.3, the prohibition against a debtor maintaining an action or defense except on a written agreement does not apply unless the written credit agreement contains the following language in ten-point boldface type:
Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrowers(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.
Mo.Rev.Stat. § 432.045.3(1). However, substantial compliance with the statutory language required by § 432.045.3 will satisfy the requirement. Landmark Systems, Inc. v. Delmar Redevelopment Corp., 900 S.W.2d 258, 261 (Mo.App.1995). It is undisputed that the contracts do not contain the precise statutory notice in question. However, as previously noted, both the written agreements had clauses indicating that the agreements were the entire agreements between the parties and were not modifiable except in writing. The only written modification of either agreement took place when Security Pacific and Cape Mobile modified the Financing *718 Agreement by executing the Memorandum Agreement.
The Court concludes that the notice language as set forth in the Repurchase Agreement and the Financing Agreement sufficiently complies with the requirements of the statute. Given the purpose of credit agreement statutes, and considering that this case concerns a sophisticated multi-million dollar financial transaction between business entities, the Court concludes that substantial compliance with the statute is sufficient and the failure to place the statutory notice in bold type does not preclude application of the statute.
Plaintiff next argues that even if the credit statute of frauds bars its contracts claims, it does not apply to its tort claims because it is a bar only to actions brought upon contracts. The remaining counts assert claims based on tortious interference and fraud. Each count is based on the same operative facts. The Court has already decided that Security Pacific had a right to declare default, and that its actions were in accordance with the plain meaning of the contracts. However, the Court will address plaintiff's argument on this matter. Defendants argue that the tort claims are completely dependant on the unenforceability of the contracts between Security Pacific and Cape Mobile and Cavalier. The only way these contracts are unenforceable is if there were oral modifications of the contracts, in the absence of written modifications, which would make the written contract no longer valid by its plain terms. Thus, defendants contend, both tort claims are actions on credit agreements and as such are also precluded by the Missouri credit statute of frauds.
Security Pacific's contention that the statute bars all claims based on credit agreements was recently addressed by the Eastern District of Missouri in Horseshoe Entertainment, L.P. v. General Electric Capital Corp., 990 F.Supp. 737 (E.D.Mo.1997) (Judge Charles A. Shaw, presiding). The court reviewed case law from other jurisdictions having credit agreement statutes of fraud and held that a credit agreement statute of frauds bars all actions based on an alleged oral credit agreement, regardless of the theory of recovery asserted. The reasoning behind this decision is that "to accept such allegations as affording recovery, grounded in concepts other than breach of contract, simply provides an easy avenue for resourceful attorneys to circumvent the [credit agreement] statute, thus defeating the legislative intent to prohibit claims stemming from hard-to-defend oral representations." Horseshoe, at 12; (quoting Fleming Irrigation, Inc. v. Pioneer Bank & Trust Co., 661 So.2d 1035, 1039 (La.App.1995)).
Plaintiff argues that applying the credit statute of frauds, which was enacted in 1990, is a retrospective application and is an unconstitutional impairment of contracts. This argument is meritless. Plaintiff cites Willhite v. Rathburn, 332 Mo. 1208, 61 S.W.2d 708, 711 (1933), which stated,
The constitutional inhibition against laws retrospective in operation ... [means] that [no statute] can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice of parties interested.
Willhite further provides that a law must not give to something already done an effect different from that which it had when it transpired. Id. Plaintiff's own case is dispositive of its objection. The credit statute of frauds acts to prevent impairment of the contracts between the parties in this case by alleged oral promises, modifications, or representations made after the statute was enacted. The alleged oral promises would be credit agreements, the very kind that are barred by the statute. Such agreements must be in writing to have any effect on a contract. All the alleged oral modifications, representations or promises occurred after the statute was enacted. This statute acts to keep the Repurchase Agreement, signed between Security Pacific and Cavalier in 1984, unimpaired.
Additionally, the credit statute of frauds does not change the long standing provisions that oral promises can be barred by the statute of frauds. In resolving an issue as to whether or not an oral agreement or promise is within the statute of frauds, the basic inquiry is whether such agreement or *719 promise is original or collateral. If original, it is enforceable; if collateral, it is not enforceable. Carvitto v. Ryle, 495 S.W.2d 109, 114 (Mo.App.1973); C.J.S. Statute of Frauds § 16 p. 522. There is no allegation that any of these alleged oral representations were original, because they are clearly all collateral to the written contracts, therefore they are all unenforceable. "One cannot defeat the enforcement of a provision of an agreement by a mere showing that the other party misrepresented its legal effect or gave assurances that the same would not be enforced." Young v. Prudential Securities, Inc., 891 S.W.2d 842, 844 (Mo.App.1995) (citing Motor Transp. Springfield v. Orval Davis Tire Co., Inc., 585 S.W.2d 195 (Mo.App.1979)). Plaintiff's claims against defendants are barred by the statute of frauds and defendants are entitled to judgment on the pleadings.
The Court will now take up plaintiff's motion to strike Counts II and III, or in the alternative strike count II and stay Count III, of defendants' counterclaim. Cavalier moves to dismiss Counts II and III of defendants counterclaim for declaratory relief pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.
The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., provides a party a remedy when the party who could sue for coercive relief has not yet done so. It relieves potential defendants from the threat of litigation "which a harassing adversary might brandish, while initiating suit at his leisure  or never." Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 2752 at p. 570 (1983). See also, BASF Corp. v. Symington, 50 F.3d 555, 558 (8th Cir.1995) ("courts regularly consider the merits of affirmative defenses raised by declaratory plaintiffs").
In Count II, defendants seek a determination that they are not liable to plaintiff for refusing to continue their relationship of providing financing on mobile homes manufactured by plaintiff. Defendants claim they are free to end their relationship with plaintiff, and they seek a declaration based on plaintiff's "current and actual threat" to bring legal action if they attempt to stop financing mobile homes sold by Cavalier. The threat of imposing liability constitutes a "live dispute" for purposes of the Declaratory Judgment Act. See Caldwell v. Gurley Refining Co., 755 F.2d 645, 649 (8th Cir.1985). The Court finds that defendants' request for declaratory relief on Count II states a claim upon which relief can be granted pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.
However, this Court is not required to adjudicate declaratory judgment actions where the case would be decided in an action already pending. Aetna Casualty and Surety Co. v. Jefferson Trust and Savings Bank of Peoria, 993 F.2d 1364 (8th Cir.1993). Defendants count III is essentially a recitation of the claims brought by plaintiff in this action. The Court will grant plaintiff's motion to dismiss Count III.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for judgment on the pleadings [document # 48] is GRANTED.
IT IS FURTHER ORDERED that plaintiff's motion to dismiss Count III of defendants' counterclaim [document # 18] is GRANTED.
IT IS FURTHER ORDERED that plaintiff's motion to dismiss Count II of defendants' counterclaim [document # 18] is DENIED.
IT IS FURTHER ORDERED that defendants' motion to strike claims for lost profits [document # 45] is DENIED as moot.
IT IS FURTHER ORDERED that defendants' motion for more definite statement [document # 7] is DENIED as moot.
IT IS FURTHER ORDERED that defendants' motion to strike [document # 27] is DENIED as moot.
IT IS FURTHER ORDERED that the motions by movants Sides and Montgomery to quash subpoenas [documents # 28, # 29, # 30, # 31, # 32, # 33, # 34, # 35, # 36, and # 37] are GRANTED. The Court believes the subpoenaed information is now unnecessary, but defendants will not be prevented *720 from filing requests for new subpoenas if they become necessary.