Bill MORRIS, Plaintiff–Appellant,

v.

Jim SCHOEN, Ed McMillan and Bank of Durango, Defendants–Appellees.

No. 98CA0489.

Colorado Court of Appeals, Div. III.

June 10, 1999.

As Modified on Denial of Rehearing Aug. 20, 1999.

Certiorari Granted May 1, 2000.

Titus & Murphy, Victor A. Titus, Farmington, New Mexico, for Plaintiff–Appellant.

Crane, Leake, Casey, Ehlers & Eggleston, Robert E. Crane, Durango, Colorado, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

Plaintiff, Bill Morris, appeals the trial court's dismissal of his claims against defendants, Jim Schoen, Ed McMillan, and the Bank of Durango (Bank). He also appeals the order awarding defendants attorney fees and costs. We reverse both the judgment of dismissal and the order and remand for further proceedings.

In September 1995, certain parties approached the Bank to discuss financing the construction of a saloon. Defendant Schoen, an employee of the Bank, helped these parties acquire two Small Business Administration (SBA) loans. However, these parties needed additional capital and started the application process for a Farmers Home Administration loan (FmHA loan).

In July 1996, the parties constructing the saloon contacted plaintiff concerning a bridge loan to pay certain vendors. According to the complaint, on July 17, 1996, defendant Schoen assured plaintiff the Bank was in the process of refinancing the saloon and that it would likely be funded within the next thirty to sixty days.

Schoen, on July 18, 1996, allegedly stated that the Farmers Home Loan Bank was in the process of funding the saloon and that it would be no longer than thirty to sixty days that this bridge loan would be paid off. The

complaint alleges he made similar assurances at the end of July 1996, and again on August 9, 1996, the date plaintiff gave defendant Schoen a check. On this date, defendant Schoen is alleged to have stated, "As we speak, this loan is being funded." Later, defendant Schoen also wrote a subordination agreement for some separate collateral. The complaint further alleges that defendant Schoen again assured plaintiff in November 1996 there was no problem and that the loan was going through.

Additional loans, now assigned to plaintiff, were made by other individuals to the parties constructing the saloon. The loans made totaled $331,000.

In December 1996, defendants informed plaintiff that the FmHA loan would not be submitted. Thereafter, the borrowing parties filed for bankruptcy protection and defaulted on all loans owed to plaintiff.

Plaintiff brought this suit against defendants, claiming, among other things, deceit based on fraud, intentional interference with contractual obligations, and outrageous conduct. Defendants, without filing an answer, moved to dismiss plaintiff's claims pursuant to C.R.C.P. 12(b)(5), asserting that § 38–10–124, C.R.S.1998, barred plaintiff's claims because they related to a credit agreement that was *not in writing* and *not signed* by defendants.

In granting the motion, the trial court determined that there was no dispute as to whether this case involved a credit agreement and concluded that the definition of "debtor" in the statute included plaintiff. This appeal followed.

## I.

Plaintiff contends that the trial court erred by applying § 38–10–124 to dismiss all of his claims. We agree.

■ Motions to dismiss under C.R.C.P. 12(b)(5) are viewed with disfavor. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095 (Colo.1995).

■ We review a trial court's determination on a motion to dismiss using the same standards as the trial court and accept all averments of material fact contained in the complaint as true. *Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo.1992). On the basis of such facts, we must then decide whether, under any theory of law, a plaintiff is entitled to relief. If relief can be granted under such circumstances, then the motion to dismiss must be denied. *Doe v. High–Tech Institute, Inc.*, 972 P.2d 1060 (Colo.App. 1998).

Section 38–10–124 provides:

(1) As used in this section unless the context otherwise requires:

(a) 'Credit agreement' means:

(I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;

. . . .

(b) 'Creditor' means a financial institution which offers to extend, is asked to extend, or extends credit under a credit agreement with a debtor.

(c) 'Debtor' means a person who or entity which obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.

(d) 'Financial institution' means a bank, savings and loan association, savings bank, industrial bank, credit union, or mortgage or finance company.

(2) Notwithstanding any statutory or case law to the contrary, including but not limited to section 38–10–112, no debtor or creditor may file or maintain an action or claim related to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought.

(3) A credit agreement may not be implied under any circumstances, including, without limitation, from the relationship, fiduciary or otherwise, of the creditor and the debtor or from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel.

■ The statute was enacted in an effort to discourage lender liability litigation and to

promote certainty in credit agreements involving a principal amount of more than $25,000 in which the creditor is a financial institution. *Norwest Bank Lakewood v. GCC Partnership*, 886 P.2d 299 (Colo.App.1994).

Here, the trial court viewed plaintiff as a "debtor" as defined by statute. Describing plaintiff as a third party to the building parties' attempt to acquire a FmHA loan, the trial court saw no reason to limit the definition of debtor to the person to whom the money would be handed in the first instance. Additionally, the court reasoned that the definition explicitly includes those who seek a credit agreement and there is no limitation contained in the definition that excludes those seeking money for a third party. It stated:

> It is doubtful that the legislature intended to limit actions on a credit agreement brought by a borrower, but to allow any and all actions brought by a third-party on the same transaction. That would defeat the intention of 'discouraging lender liability litigation' and would lead to the absurd result of third-parties having more rights than the actual parties to the contract.

It therefore concluded that the definition of debtor included plaintiff.

Plaintiff, however, asserts that the trial court erred in finding that he was a debtor under § 38–10–124 and in applying this statute to bar his claims. Defendants in turn rely on the existence of a credit agreement between plaintiff and the Bank to argue that the statute applies. We agree with plaintiff.

■ In interpreting a statute, we must give effect to the intent of the lawmaking body, and there is a presumption that the General Assembly intends a just and reasonable result. Thus, a statutory interpretation that defeats the legislative intent or leads to an absurd result will not be followed. A statute must be read and considered as a whole and should be construed to give consistent, harmonious, and sensible effect to all of its parts. Finally, although we must give effect to the statute's plain and ordinary meaning, the intention of the General Assembly will prevail over a literal interpretation of the statute that leads to an absurd result. *AviComm, Inc. v. Colorado Public Utilities Commission*, 955 P.2d 1023 (Colo.1998).

■ Considering the statute as a whole, we conclude that plaintiff is not a debtor within the meaning of the statute and that the Bank's interpretation leads to absurd results. Under § 38–10–124(1)(b), C.R.S. 1998, as quoted above, a "creditor" is a financial institution involved in the actual or proposed extension of credit to a debtor, as that term is defined in § 38–10–124(1)(c), C.R.S. 1998.

■ Two of the definitions of a debtor—one who obtains credit and one who owes money to a creditor—necessitate a borrower-lender relationship. Read in that context, we view the intent of the General Assembly to mean that one who "seeks a credit agreement" is a person or entity in a similar type of relationship. Thus, for the statute to apply here, plaintiff and the Bank must also be similarly situated.

This is consistent with the requirement of the statutory definition of "creditor" requiring a credit agreement "with a debtor."

Here, no credit was offered to, requested by, or extended to plaintiff. Under the circumstances at issue here, plaintiff owed no debt to anyone, the Bank or the builders of the saloon.

Defendants, however, contend that, once it is determined that there is a credit agreement between plaintiff and the Bank, it follows that plaintiff is a debtor and the Bank is a creditor for purposes of the financial institutions statute of frauds. In this regard, they assert that the term "credit agreement" includes any representation allegedly made by the Bank in connection with any commitment to lend or to make any other financial accommodation. We are not persuaded.

A debtor is limited to a person or entity within the scope of the three definitions provided by the statute. Because there is no dispute that plaintiff did not obtain credit from defendants and did not owe them money, he can only be considered a debtor if he sought a credit agreement with a creditor.

Even if the representations of the Bank can technically be characterized as a credit

agreement based on making a financial accommodation to the builders of the saloon, plaintiff could not be characterized as a debtor. Such a reading leads to an absurd result. It is undisputed that defendants did not offer to extend, that plaintiff did not ask them to extend, nor did the defendants actually extend credit to plaintiff. Indeed, plaintiff did not seek a loan or any other form of credit from defendants.

Although defendants invite us to expand the definition of a creditor contained in § 38–10–124(1)(b) to include any party to a credit agreement and to situations that do not involve the lending of money or extension of credit to plaintiff, we decline to do so. If we were to adopt defendants' interpretation of the statute, a financial institution that deliberately makes false oral representations to induce another to lend money to a bank client would be immunized from liability.

Our conclusion is supported by the cases interpreting § 38–10–124. Thus far, the statute has been applied only to situations involving direct borrower-lender relationships or guarantors of debtors in those relationships, and we see no reason to apply it to the circumstances here. See Univex International, Inc. v. Orix Credit Alliance, Inc., 914 P.2d 1355 (Colo.1996) (action to enforce an oral agreement to sell collateral which accompanies an oral purchase money credit agreement between plaintiff and financing party); Hewitt v. Pitkin County Bank & Trust Co., 931 P.2d 456 (Colo.App.1995) (borrower sued the lending bank after it reneged on certain alleged oral modifications regarding his payments on promissory notes); Norwest Bank Lakewood v. GCC Partnership, supra (defendant executed a promissory note payable to bank, secured by a second deed of trust on an office building and a residence); Pima Financial Service Corp. v. Selby, 820 P.2d 1124 (Colo.App.1991) (action by financial institution to recover deficiency judgment following foreclosure on property securing repayment of promissory note executed by partnership and guaranteed by defendant).

 Nor is plaintiff's position the equivalent of a guarantor as in Pima Financial Service Corp., Inc., supra, as defendants contend. A guaranty is a collateral promise to answer for the debt or obligation of another. The extent of a guarantor's liability is determined by the language of the written instrument, and absent language to the contrary, it is usually equal to that of the principal debtor. First Interstate Bank v. Colcott Partners IV, 833 P.2d 876 (Colo.App.1992). However, the borrowers here were the parties building the saloon and there is no assertion that plaintiff promised to answer for their debt.

We also note that the legislative history of this statute, which was included in the record, is consistent with the plain meaning of the statutory language. See Colorado Ass'n of Public Employees v. Department of Highways, 809 P.2d 988 (Colo.1991) (considering consistency of legislative history with plain meaning of statute).

The legislative history of the statute before us reveals that the General Assembly sought to create a "narrow exception" to the statute of frauds involving loan activity between borrowers and lenders. Representative Williams, in explaining the bill stated:

> There have been a lot of lawsuits up to this point where people have indicated the loan officer gave me the impression that I had the loan and I relied upon that, and the lender ends up being in court. It also works the other way, also. Is that [sic] a lot of times the borrower will say things in passing and that the lender would have liked to have relied on those things and the borrower says well, you don't—well, you know, it's not in writing and I never intended that. . . .

See Hearings on H.B. 1116 before the House Business Committee, 57th General Assembly, 1st Session (January 19, 1989); see also Hearings on H.B. 1116 before Senate Finance Committee, 57th General Assembly, 1st Session (February 16, 1989).

Consequently, because we conclude that plaintiff is not a debtor for purposes of § 38–10–124, the trial court's dismissal of his claims cannot stand. And, in view of this disposition, we need not address any remaining contentions, including plaintiff's assertion that the trial court erred by finding each appellee a creditor under § 38–10–124(1)(b).

## II.

Plaintiff also contends that the award of attorney fees and costs to defendants pursuant to § 13–17–201, C.R.S.1998, should be overturned. We agree.

Because we have concluded that plaintiff's claims were improperly dismissed, the award of attorney fees and costs must be reversed. *See Sundheim v. Board of County Commissioners,* 904 P.2d 1337 (Colo.App.1995) (where one of plaintiffs' four claims had been restored in part on appeal, § 13–17–201 not available as basis for an award of attorney fees).

Accordingly, the judgment dismissing plaintiff's claims and the award of attorney fees and costs to defendants are reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judge JONES and Judge ROY, concur.