Jim SCHOEN, Ed McMillan and Bank of Durango, Petitioners,

v.

Bill MORRIS, Respondent.

No. 99SC588.

Supreme Court of Colorado, En Banc.

Dec. 18, 2000.

Crane, Leake, Casey, Ehlers & Eggleston, P.C., Robert E. Crane, Duke Eggleston, Durango, CO, Attorneys for Petitioners.

Titus & Murphy, Victor A. Titus, Farmington, NM, Attorneys for Respondent.

Abadie & Zimsky, LLC, William E. Zimsky, Durango, CO, Attorneys for Amicus Curiae Jack Lang, Kenneth Ellis and George Red Pennington, ("The Lang Group").

McKenna & Cuneo, L.L.P., John E. Burrus, Denver, CO, Attorneys for Amicus Curiae Independent Bankers of Colorado.

Hogan & Hartson, L.L.P., David L. London, Denver, CO, Attorneys for Amicus Curiae Colorado Bankers Association.

Justice RICE delivered the Opinion of the Court.

We issued a writ of certiorari to review the court of appeals' judgment in *Morris v. Schoen*, 998 P.2d 38 (Colo.Ct.App.1999). Respondent, Bill Morris ("Morris"), brought suit against Petitioners, the Bank of Durango and its representatives, (collectively, the "Bank"), claiming deceit based on fraud, intentional interference with contractual obligations, outrageous conduct and prima facie tort. The trial court dismissed Morris's claims under C.R.C.P. 12(b)(5), finding that the credit agreement statute of frauds, section 38–10–124, 10 C.R.S.2000, barred Morris's claims. The court of appeals reversed the trial court's judgment on the grounds that the credit agreement statute of frauds does not apply because no borrower-lender relationship existed between Morris and the Bank. We granted certiorari to determine whether the credit agreement statute of frauds applies to the oral representations made in this case between the Bank and Morris, both of whom are lenders to the same borrower. We now reverse the judgment of the court of appeals and hold that the credit agreement statute of frauds bars the oral representations made between the parties in this case, notwithstanding the absence of a direct borrower-lender relationship between them.

## I. FACTS AND PROCEDURAL HISTORY

In 1996, the Bank made two Small Business Administration ("SBA") loans in the amount of $750,000 to Mi–Dee Patterson, Inc. ("Mi–Dee") to finance the construction of a dance hall and saloon. Later, when Mi–Dee's needs exceeded the amount of the SBA loans, it applied for a Farmer's Home ("FmHA") loan. While the permanent FmHA loan was pending, Mi–Dee applied for several bridge loans from Morris to pay its construction vendors. Morris alleges that he made the loans based, in part, on the Bank's

assurances that the permanent FmHA loan had been approved and was to be funded within thirty to sixty days, at which time the bridge loans would be paid off. Additional loans to Mi–Dee, now assigned to Morris, were made by other parties. However, the FmHA loans were never made, and Mi–Dee defaulted on all the loans owed to Morris after filing for bankruptcy.

Morris brought suit against the Bank, claiming deceit based on fraud, intentional interference with contractual obligations, outrageous conduct and prima facie tort. The Bank moved to dismiss the claims under C.R.C.P. 12(b)(5), asserting that the credit agreement statute of frauds, section 38–10–124, 10 C.R.S. (2000), barred the action because it involved an oral credit agreement. The trial court granted the motion. In doing so, the court determined that there was no dispute as to whether the case involved a "credit agreement," as defined under the statute, and that so long as Morris was within the scope of the statute, all of his claims would be barred. The court noted that by enacting the credit agreement statute of frauds, the legislature intended to discourage lender liability litigation and to promote certainty in credit agreements. The court concluded that Morris was within the scope of the term "debtor" as defined by statute, because it determined that the legislature did not intend to limit actions brought by a borrower, but not those brought by a third-party on the same transaction. Thus, the court granted the Bank's motion to dismiss.

The court of appeals held that the trial court erred in dismissing Morris's claims because it found that Morris was not a "debtor" within the meaning of the credit agreement statute of frauds. *Morris*, 998 P.2d at 42. The court held that under the statute's definition of "debtor," a borrower-lender relationship was required. *Id.* Since no such relationship existed here, the court held that Morris's claims were improperly dismissed. *Id.* The court noted that the credit agreement statute of frauds has only been applied

to situations involving direct borrower-lender relationships or guarantors of debtors. *Id.* The court also noted that the legislative history of the credit agreement statute indicates that the General Assembly sought to create a "narrow exception" to the statute of frauds involving loan activity between borrowers and lenders. *Id.* Accordingly, the court reversed the trial court's judgment dismissing Morris's claims. *Id.* The court of appeals later denied the Bank's petition for rehearing.

We granted certiorari to determine whether the credit agreement statute of frauds, section 38–10–124, 10 C.R.S. (2000), applies only to credit agreements between borrowers and lenders, or whether it applies also to the parties in this case.[1]

## II. ANALYSIS

### A. Standard of Review

■ We are reviewing the trial court's dismissal of Morris's claims under C.R.C.P. 12(b)(5). In doing so, we apply the same standards as the trial court and accept all averments of material fact as true and in the light most favorable to the plaintiff. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo.1999). Rule 12(b)(5) motions are viewed with disfavor, and should not be granted unless it appears beyond doubt that the plaintiff cannot prove facts in support of the claim that would entitle the plaintiff to relief. *Dunlap v. Colo. Springs Cablevision*, 829 P.2d 1286, 1290 (Colo.1992).

### B. Statutory Interpretation

■ In this case, we interpret the credit agreement statute of frauds at section 38–10–124, as applied to claims arising from oral representations made to an interim lender by a permanent lender. When interpreting any statute, we strive to effectuate the intent of the legislature. *People v. McCullough*, 6 P.3d 774, 778 (Colo.2000); *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.

---

1. We granted certiorari on the following issue: Whether the Court of Appeals erred as a matter of law in determining that the credit agreement statute of frauds, C.R.S. § 38–10–124, applies only to credit agreements between borrowers and lenders, and in holding that the credit agreement statute of frauds does not apply to oral credit agreements between permanent lenders and interim lenders and other non-borrowers.

1996); *Lakeview Assocs. v. Maes*, 907 P.2d 580, 584 (Colo.1995). In doing so, we look first to the plain language of the statute. *McCullough*, 6 P.3d at 778; *Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. If the plain language is unambiguous, it is unnecessary to resort to rules of statutory construction. *McCullough*, 6 P.3d at 778; *Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584.

### C. The Credit Agreement Statute of Frauds

Under section 38–10–124, "no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought." § 38–10–124(2), 10 C.R.S. (2000). The issue before us is whether the credit agreement statute of frauds bars Morris's claims, arising from assurances made to him by the Bank, another lender to the same borrower. In making this determination, we must establish (1) whether the Bank's oral representations upon which Morris's claims are based constitute a "credit agreement"; and (2) whether the parties in this case qualify as a "creditor" and a "debtor" under the statute.[2]

### *The Existence of a Credit Agreement*

■ The Bank argues that its alleged commitment to provide a permanent loan to Mi–Dee constitutes an oral credit agreement under the plain meaning of the statute. We agree. Under the statute, a credit agreement is defined in relevant part as: "A contract, promise, undertaking, offer or *commitment to lend,* borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation." § 38–10–124(1)(a) (emphasis added).

Although we have not previously considered whether assurances between lenders to the same borrower constitute "credit agreements" under the credit agreement statute of frauds, Colorado cases applying the statute

have adopted a broad definition of the term "credit agreements." In *Univex Int'l., Inc. v. Orix Credit Alliance, Inc.,* we noted that the statute "does not apply only to claims involving transactions which are characterized exclusively as credit agreements, but also ... to claims which merely relate to credit agreements." 914 P.2d 1355, 1358 (Colo.1996). We then concluded that the statutory definition of a "credit agreement" was sufficiently broad to include a sales agreement containing financing terms for the proposed sale. *Id.* Similarly, in *Pima Fin. Serv. Corp. v. Selby,* the court of appeals held that a settlement agreement resolving a deficiency dispute constituted a "credit agreement" under the statute because it waived the terms of the original credit agreement based on which the deficiency claim was made 820 P.2d 1124, 1127 (Colo.Ct.App.1991); *see* § 38–10–124(1)(a)(II) (including in the definition of credit agreement "[a]ny amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any ... credit [agreement].").

Courts in other jurisdictions with similar statutes have also applied the definition of "credit agreement" broadly. *See e.g., Schering–Plough Healthcare Prod., Inc. v. NBD Bank, N.A.,* 98 F.3d 904, 911 (6th Cir.1996) (holding that under the Michigan statute of frauds, a credit agreement included issuing a cashier's check in exchange for a check drawn on a sweep account, certifying a check drawn on a sweep account, and making funds represented by a check drawn on such an account available); *Whirlpool Fin. Corp. v. Sevaux,* 96 F.3d 216, 222–23 (7th Cir.1996) (holding that promises to invest constituted a credit agreement under the Illinois Credit Agreements Act because at least part of the intended investment package included debt financing); *Cavalier Homes of Ala., Inc. v. Sec. Pac. Hous. Serv., Inc.,* 5 F.Supp.2d 712, 717 (E.D.Mo.1997) (holding that a repurchase agreement between a manufacturer and a retailer's lender constituted a credit agreement under Missouri law); *Bank One, Springfield v. Roscetti,* 309 Ill.App.3d 1048,

---

2. The record demonstrates, and the parties do not dispute, that the Bank's alleged assurances were neither in writing, nor signed by the Bank.

Furthermore, the record demonstrates that the $1,200,000 FmHA loan in question satisfies the $25,000 minimum provided for by the statute.

243 Ill.Dec. 452, 723 N.E.2d 755, 763 (1999) (holding that an oral modification of a guarantee fell within the Illinois statute of frauds because the guarantee constituted part of a comprehensive credit agreement); *Rural Am. Bank of Greenwald v. Herickhoff,* 485 N.W.2d 702 (Minn.1992) (holding that an agreement to apply a borrower's payments to one loan before another constituted a financial accommodation, and therefore a credit agreement under the Minnesota statute of frauds).

▮ In the present case, Morris's claims against the Bank arise from alleged assurances by the Bank that Morris's bridge loans were to be paid off by proceeds from a permanent FmHA loan to Mi–Dee that had been approved and was to be funded shortly. The plain language of the statute indicates that the Bank's assurances constitute a "commitment to lend" money to Mi–Dee, and thus a "credit agreement" under the credit agreement statute of frauds. *See* § 38–10–124(I). Nothing in that language, or in the relevant case law, limits the definition of "credit agreement" to commitments to lend money made only to the party receiving the loan proceeds. Rather, the cases suggest a broad definition of the term "credit agreement." Accordingly, we hold that the oral representations made by the Bank in this case to Morris constitute a "credit agreement" under the credit agreement statute of frauds.

### Debtor and Creditor

▮▮ We now turn to the issue of whether the parties in this case constitute a debtor and a creditor under the credit agreement statute of frauds. The statute only bars claims filed or maintained by a "debtor or creditor." § 38–10–124. Under the statute, a creditor is "a financial institution which offers to extend, is asked to extend, or extends credit under a credit agreement with a debtor." § 38–10–124(1)(b). A debtor is defined as "a person who or entity which obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor." § 38–10–124(1)(c).

The Bank argues that the court of appeals erred in interpreting these definitions as requiring a borrower-lender relationship and in

thus holding that third-party lenders do not constitute "debtors" under the credit agreement statute of frauds. *See Morris,* 998 P.2d at 41. We agree.

The plain language of the statute indicates that a debtor is one who seeks a credit agreement with a creditor. § 38–10–124(1)(c). Since we have determined that the oral representations made by the Bank to Morris constitute a credit agreement, it follows that Morris qualifies as a person seeking such an agreement. Thus, Morris is a "debtor" under the plain language of the statute.

Similarly, the statute requires that a "creditor" offer to extend credit under a credit agreement with a debtor. § 38–10–124(1)(b). Since we have determined that the Bank's oral representations to Morris constitute a credit agreement, and that Morris is a "debtor," it follows that the Bank qualifies as a "creditor" under the plain language of the statute.

▮ A review of the legislative history supports this interpretation. By enacting the statute, the legislature intended to discourage lender liability litigation and to promote certainty into credit agreements involving sums of more than $25,000. *Norwest Bank Lakewood, N.A. v. GCC P'ship,* 886 P.2d 299, 301 (Colo.Ct.App. 1994). Specifically, by enacting the credit agreement statute of frauds, the legislature hoped to curtail suits against lenders based on oral representations made by members of the credit industry. Representative Kopel, a supporter of the bill, testified during the House Business Affairs Committee Meeting that:

> It's happened in other states and it's happened because there is some litigation at a very high level for many millions of dollars where someone has claimed that a statement was made to them by the credit industry, whether finance manager of a bank or whatever, and sometimes courts have used that as a basis for determining yes, there was a contract even though nothing was in writing because other individuals went ahead and relied upon that oral representation.

Recordings of the House Business Affairs Committee on H.B. 11–16–1989, January 19, 1989, 57th General Assembly.

The legislative history also indicates that the statute was intended to be broadly applied. For example, the statute specifically bars claims such as part performance and promissory estoppel. § 38–10–124(3).[3] In discussing the statute's bars to such equitable claims, the general counsel for the Colorado Bankers Association, who sponsored the bill, testified: "[Such claims are barred] to make it absolutely certain that there are no exceptions to the statute of frauds as [it applies] to $25,000 ... loan agreements and above from financial institutions." Recordings of the House Business Affairs Committee on H.B. 11–16–1989, January 19, 1989, 57th General Assembly. Thus, the legislative history indicates an intent to impose a broad ban on claims arising from oral representations made by financial institutions.

In addition, although the credit agreement statute of frauds has not previously been applied to representations between lenders to the same borrower by courts in Colorado or in other jurisdictions, the case law supports a broad interpretation of the statute. For example, in Colorado, the court of appeals has broadly applied the statute to bar a guarantor's claims arising from an oral settlement agreement discharging his obligations under the original credit agreement. See Pima, 820 P.2d at 1128. The court of appeals has also held that the statute bars not only contractual claims, but also claims in tort arising from an oral credit agreement. See Hewitt v. Pitkin County Bank & Trust Co., 931 P.2d 456, 459 (Colo.Ct.App.1995) (concluding that the language of the statute is not limited by its terms to contract claims or to only those tort claims which seek the enforcement of a credit agreement); Norwest Bank, 886 P.2d at 302 (noting that legislative history confirms the pervasive purpose and scope of the statute).

Similarly, courts in other jurisdictions have generally applied such statutes broadly. See,

e.g., Cavalier, 5 F.Supp.2d at 718 (holding that tort claims were barred under the Missouri credit statute of frauds); McAloon v. Northwest Bancorp, Inc., 274 Ill.App.3d 758, 211 Ill.Dec. 281, 654 N.E.2d 1091, 1095 (1995) (holding that the Illinois Credit Agreements Act was intended to extend beyond the existing statute of frauds).

The Seventh Circuit has considered the application of the Illinois Credit Agreements Act to claims brought by a third-party to an oral agreement. See Whirlpool, 96 F.3d at 216. In Whirlpool, the owner of a Venezuelan corporation with severe cash flow difficulties brought suit against an investor that had reneged on its oral promises to invest $17.5 million into the corporation. Id. at 218. The owner alleged that the investor had falsely represented an intent to invest in the company, causing the owner, in reliance on that promise, to invest $1 million of his own money into the company. Id. at 220. The court did not discuss whether the owner qualified as a "debtor" under the statute with regard to the investor's promise to invest in the company. Rather, the court concluded that the investor's promise to invest constituted a credit agreement because it included, at least in part, debt financing. Id. at 222. Accordingly, the court held that the Illinois Credit Agreements Act barred the claims arising from the investor's oral promises. Id. at 224. Thus, while no other cases have applied a credit agreement statute of frauds to oral representations made between lenders, at least one case has applied such a statute to bar third-party claims against a financial institution.

Finally, public policy considerations support our conclusion that the credit agreement statute of frauds should apply to bar the claims brought in this case, which arose from oral representations made between lenders to the same borrower. A more restrictive reading would effectively provide greater rights to a third-party lender than those afforded to a borrower. That a third-party

---

**3.** Commentators write: "In a sharp departure from recent legislation in other states, [the statute] attempts to abrogate judicially developed exceptions to the statute of frauds, such as part performance and estoppel, which could other-

wise provide a basis for enforcing an oral loan agreement." Stephanie J. Shafer, Limiting Lender Liability Through the Statute of Frauds, 18 Colo. Law. 1725, 1725 (1989).

could bring a suit against a lender for its false assurances to lend money to a borrower who could not himself bring such a suit, is a result that could not have been contemplated by the legislature. Providing rights to third-party lenders greater than those afforded to borrowers would contravene the plain language of the statute and the legislature's intent in enacting the statute.

In sum, the plain language of the credit agreement statute of frauds does not limit its application to claims between parties with a direct borrower-lender relationship. Furthermore, the legislative history, the relevant case law, and public policy demonstrate the appropriateness of applying the statute broadly to bar suits based upon all oral promises to lend money, including those made by the Bank in this case. Accordingly, we hold that the court of appeals erred in requiring a direct borrower-lender relationship, and that the terms "debtor" and "creditor" require no such relationship under the credit agreement statute of frauds. Therefore, the claims brought by Morris, arising from oral representations made by the Bank, another lender, concerning its extension of credit to a common borrower, were properly barred by the credit agreement statute of frauds.

### III. CONCLUSION

We hold that the oral representations made in this case by the Bank to Morris constitute a "credit agreement" under the credit agreement statute of frauds. We also hold that the Bank qualifies as a "creditor" and that Morris qualifies as a "debtor" under the statute, despite the absence of a direct borrower-lender relationship. The trial court properly dismissed Morris's claims, and we reinstate its judgment. *See First Nat'l. Bank of Telluride v. Fleisher*, 2 P.3d 706, 716 (Colo.2000). Therefore, we reverse the court of appeals judgment holding that the trial court erred in applying the credit agreement statute of frauds to bar Morris's claims.

