**NORWEST BANK LAKEWOOD, NATIONAL ASSOCIATION, Plaintiff–Appellee,**

v.

**GCC PARTNERSHIP, a Colorado general partnership, Ann A. Moore, Michael C. Moore, Linda S. Plaut, and Frank D. Plaut, Defendants–Appellants.**

No. 93CA0484.

Colorado Court of Appeals, Div. IV.

June 2, 1994.

Rehearing Denied July 14, 1994.

Certiorari Denied Jan. 17, 1995.

Kutak Rock, Cassandra G. Sasso, John P. Jones, Denver, for plaintiff-appellee.

Gersh & Danielson, Miles M. Gersh, Kimberly J. Graber, Denver, for defendants-appellants.

Opinion by Judge HUME.

Defendants, GCC Partnership (GCC), Ann A. and Michael C. Moore, and Linda S. and Frank D. Plaut, appeal the summary judgment entered in favor of plaintiff, Norwest Bank Lakewood, National Association (formerly United Bank of Lakewood, National Association). We affirm.

In April 1990, GCC executed a promissory note payable to plaintiff. The note was secured by a second deed of trust on an office building owned by the partnership and the Moores' residence and was guaranteed by the partners of GCC and their wives, the individual defendants in this case.

During July and August 1991, the first lienholder foreclosed its deed of trust on the partnership office building and was later left with a deficiency. At approximately the same time, defendants stopped making payments to plaintiff and began negotiating a restructuring of the debt owed to plaintiff on the promissory note. Defendants Plaut and Moore and their attorney initially dealt with a bank officer with whom Plaut had done business for many years. However, they were later directed to deal exclusively with the portfolio manager of a "loan support team" headquartered at Norwest Denver, National Association.

At the first meeting with the portfolio manager, defendants were told that they would be receiving a demand notice, but that it was a "mere formality," and that plaintiff was willing to negotiate a restructuring of

the debt. Thereafter, defendants ignored the notice, and negotiations continued between plaintiff, through the portfolio manager, and defendants and their attorney. During this time, plaintiff was evaluating its options of foreclosing on any or all of the property securing the note.

In December 1991, after plaintiff had initiated a foreclosure of Moores' home, but before the foreclosure sale, defendants agreed among themselves to pay an amount which the portfolio manager had agreed to recommend as acceptable to permit extension of the loan. However, defendants' attorney was unable to make personal contact with the portfolio manager to make the offer. In late January 1992, approximately three weeks before the foreclosure sale, the attorney made an offer in a message which he left on the portfolio manager's answering machine. The portfolio manager did not respond.

Subsequently, on February 12, 1992, plaintiff purchased the Moores' residence at the foreclosure sale and later brought this action to recover the remaining deficiency owed on the note. Defendants asserted counterclaims for breach of a duty of good faith and fair dealing, breach of fiduciary duty, and negligent misrepresentation. Plaintiff moved to dismiss the counterclaims and for summary judgment on its claim for deficiency judgment. The trial court granted summary judgment dismissing defendants' counterclaims and in favor of plaintiff on the deficiency claim after determining that plaintiff was not acting as a fiduciary for defendants and that claims based upon breaches of contract cannot be enforced as tort claims.

Defendants appeal, contending that the trial court erred in granting summary judgment on their counterclaims for breach of fiduciary duty and negligent misrepresentation.

■■ Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party is entitled to all favorable inferences that may be drawn from the evidence, and all doubts must be resolved against the moving party. *Peterson v. Halsted*, 829 P.2d 373 (Colo.1992).

■ Once the moving party has met its initial burden of production, the burden shifts to the non-moving party to establish that a triable issue of fact exists. *Mancuso v. United Bank*, 818 P.2d 732 (Colo.1991).

■ A correct judgment will not be disturbed on review, even if the reason for the trial court's ruling may be wrong. *Cole v. Hotz*, 758 P.2d 679 (Colo.App.1987).

Plaintiff asserted in the trial court that defendants' counterclaims were barred by operation of the statute of frauds relating to credit agreements, § 38–10–124, C.R.S. (1993 Cum.Supp.). It has reasserted that contention here as an additional basis for affirming the trial court's summary dismissal.

■ That issue has been fully briefed and argued by the parties on appeal, as it was before the trial court. Hence, we may consider whether application of the statute required dismissal of the counterclaims relating to credit agreements involving a financial institution as a matter of law.

■ Section 38–10–124 was enacted by the General Assembly in 1989 in an effort to discourage lender liability litigation and to promote certainty into credit agreements involving a principal amount of more than $25,000 in which the creditor is a financial institution. The act requires all such "credit agreements" to be written and signed by the party against whom enforcement is sought in order to be enforceable.

The term "credit agreement" is broadly defined as:

(I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;

(II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraph (I) and (III) of this paragraph (a); and

(III) Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums

due under, any of the credit agreements defined in subparagraphs (I) and (II) of this paragraph (a).

Section 38–10–124(1)(a), C.R.S. (1993 Cum. Supp.).

Section 38–10–124(2), C.R.S. (1993 Cum. Supp.) provides that no debtor or creditor may file or maintain an action or claim relating to an oral credit agreement involving a principal amount exceeding $25,000. And, § 38–10–124(3), C.R.S. (1993 Cum.Supp.) precludes exceptions by implication "under any circumstances, including, without limitation, from the relationship, fiduciary or otherwise, of the creditor and the debtor or from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel."

The plain language of the statute renders it applicable to a purported agreement, negotiation, representation, or promise that assertedly amends, cancels, or waives any terms or provisions of a previous credit agreement. *Pima Financial Service Corp. v. Selby*, 820 P.2d 1124 (Colo.App.1991).

In addition, our review of the legislative history of the statute confirms both the pervasive purpose and scope of the plain words of the statute. *See* Hearings on H.B. 1116 before House Business Committee, 57th General Assembly, 1st Session (January 19, 1989). *See also* Hearings on H.B. 1116 before Senate Finance Committee, 57th General Assembly, 1st Session (February 16, 1989).

Here, defendants seek to enforce oral promises or representations made during negotiations to modify or vary the terms of their $475,000 promissory note executed in April 1990. We reject defendants' argument that the statute does not preclude actions sounding in tort. The plain language of the statute applies to effectuate a bar to any action or claim *relating to* a credit agreement and expressly precludes exceptions by implication or construction.

The plain language of the statute renders representations, warranties, or omissions in connection with credit agreements inoperative unless they are reduced to writing. Thus, as a matter of law, reliance upon such representations made in connection with negotiations for credit agreements or their waiver, modification, or extension can be neither reasonable nor justifiable.

In our view, the plain language of the statute thus precludes the actions here for breach of fiduciary duty and for negligent or fraudulent misrepresentation based upon parol credit agreements involving a principal amount over $25,000.

Since we conclude that defendants' counterclaims are barred by operation of § 38–10–124, and were properly dismissed, we need not address the other contentions of error asserted by defendants.

The judgment is affirmed.

DAVIDSON and CASEBOLT, JJ., concur.