William W. HEWITT, Plaintiff–Appellant,

v.

PITKIN COUNTY BANK AND TRUST COMPANY, a Colorado Corporation; and Charles Israel and Jack LaVold, Individually and as Agents of Pitkin County Bank and Trust Company, Defendants–Appellees.

No. 93CA1769.

Colorado Court of Appeals, Div. III.

April 20, 1995.

Rehearing Denied May 25, 1995.

Certiorari Denied Feb. 18, 1997.

Burg & Eldredge, P.C., Michael S. Burg, Janet R. Spies, Jack D. Robinson, Denver, for plaintiff-appellant.

Greengard Senter Goldfarb & Rice, Thomas S. Rice, John R. Haberland, Denver, for defendant-appellee Pitkin County Bank and Trust Co.

No appearance for defendant-appellee Charles Israel.

No appearance for defendant-appellee Jack LaVold.

Opinion by Judge TAUBMAN.

In this lender liability dispute, plaintiff, William W. Hewitt, appeals from the judgment entered against him and in favor of defendants, Pitkin County Bank and Trust Co. and Charles Israel and Jack LaVold, individually and as agents of the bank (collectively bank). We affirm.

To assist Hewitt with the construction of a single family dwelling in Aspen, Colorado, the bank extended to him three separate loans totaling $760,000. In return, the bank obtained three separate deeds of trust on Hewitt's property.

Following numerous written modifications to the maturity dates on two of the promissory notes Hewitt had executed, Hewitt alleged that the bank agreed to certain oral modifications regarding his payments on the promissory notes. Further, Hewitt maintained that the bank had agreed not to commence foreclosure proceedings, on the condition that he make certain payments on the promissory notes. According to Hewitt, the bank reneged on these oral agreements and commenced foreclosure proceedings against him. As a result of the foreclosure proceedings, Hewitt's property, including the newly constructed house, was sold for $1,350,000.

Subsequently, Hewitt instituted this action, alleging twelve claims for relief including breach of contract, interference with contractual relations, breach of fiduciary duty, negligent misrepresentation, intentional misrepresentation, breach of good faith under the

Uniform Commercial Code, negligence, misapplication of funds, and outrageous conduct.

Initially, the district court entered summary judgment in favor of the bank on the breach of contract claim and all but two of the remaining claims for relief. It held that, based upon the undisputed facts, the breach of contract claim and six of the tort claims were barred by the statute of frauds relating to credit agreements, § 38–10–124, C.R.S. (1994 Cum.Supp.). Further, the trial court dismissed Hewitt's three outrageous conduct claims for relief, concluding that the allegations of the complaint did not amount to outrageous conduct as a matter of law. Subsequently, the trial court entered a directed verdict in favor of the bank on Hewitt's claim for exemplary damages and entered judgment upon a jury verdict in favor of the bank on Hewitt's interference with prospective business advantage claim for relief.

Hewitt now appeals from the trial court's rulings with respect to all but his breach of contract claims for relief.

## I.  Applicability of Statute of Frauds Relating to Credit Agreements

Hewitt contends that the trial court erred in applying the statute of frauds relating to credit agreements, § 38–10–124, to bar his third through eighth claims dismissed on the summary judgment. He maintains that this statute is intended to eliminate breach of oral contract claims, or claims seeking to enforce an oral credit agreement, but not to bar all tort claims arising out of a credit agreement. We disagree with this argument.

Section 38–10–124 requires that all credit agreements involving a principal amount of more than $25,000 in which the creditor is a financial institution be written and signed by the party against whom enforcement is sought in order to be enforceable. The term "credit agreement" is defined in § 38–10–124(1)(a), C.R.S. (1994 Cum.Supp.) as meaning contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forebear repayment of money ... [and extends also to include]:

> (II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit

agreements defined in subparagraphs (I) and (III) ... and

> (III) Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums due under, any of the credit agreements defined in subparagraphs (I) and (II) of this paragraph (a).

In *Norwest Bank Lakewood v. GCC Partnership*, 886 P.2d 299 (Colo.App.1994), a division of this court interpreted § 38–10–124 as precluding actions sounding in tort. Construing § 38–10–124(2), C.R.S. (1994 Cum. Supp.), the panel held that "the plain language of the statute applies to effectuate a bar to any action or claim *relating to* a credit agreement and expressly precludes exceptions by implication or construction." *Norwest Bank Lakewood v. GCC Partnership, supra,* 886 P.2d at 302 (emphasis in original).

Notwithstanding this holding, Hewitt contends that *Norwest Bank Lakewood* should be limited to its facts so as to bar only tort claims brought to enforce a credit agreement. Specifically, relying on language in the opinion that "defendants seek to enforce oral promises or representations made during negotiations to modify or vary the terms of their ... promissory note," he maintains that *Norwest Bank Lakewood* should not be construed broadly so as to prohibit the assertion of all tort claims. Indeed, he suggests that such a broad interpretation would encourage tortious conduct by lenders and leave borrowers without a judicial remedy in such situations. We reject this interpretation of *Norwest Bank Lakewood.*

As we read that decision, the panel concluded that the intent of the General Assembly in enacting § 38–10–124 was to discourage lender liability litigation and to promote certainty concerning credit agreements involving a principal amount of more than $25,-000. The language in § 38–10–124(2), which prohibits filing or maintaining an action *or a claim* relating to an oral credit agreement is not limited by its terms *to* contract claims or to those tort claims which seek the enforcement of a credit agreement.

Insofar as the *Norwest Bank Lakewood* panel characterized the tort claims there for breach of fiduciary duty and negligent misrepresentation as actions to enforce oral promises or representations, we consider that such language was simply construing those tort claims as relating to "credit agreements" as that term is broadly defined in § 38–10–124(1)(a). Thus, we hold that any tort claims relating to an oral credit agreement involving a principal amount exceeding $25,000 are barred by § 38–10–124. Rather than encouraging tortious behavior by lenders, this interpretation comports with the General Assembly's intent that borrowers and lenders alike must be sure to "put it in writing," to ensure the enforceability of any claims they may have in the future.

Accordingly, we affirm the trial court's summary judgment dismissing Hewitt's third through eighth claims for relief.

## II. Outrageous Conduct

Hewitt next contends that the trial court erred in dismissing his claims for outrageous conduct. We disagree.

To the extent those three claims concern the bank's administration, servicing, and handling of Hewitt's promissory notes and the related foreclosure proceedings, they "relate to" an oral credit agreement involving a principal amount exceeding $25,000, and therefore are barred by the reasoning expressed in part I of this opinion. *See Cole v. Hotz,* 758 P.2d 679 (Colo.App.1987) (appellate court may affirm trial court on different ground).

To the extent this claim is not predicated upon an oral agreement, we reject Hewitt's contention that he has adequately pleaded an outrageous conduct claim.

In alleging an outrageous conduct claim, a plaintiff must assert there was conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970). An outrageous conduct claim may lie in a commercial setting. *See*

*Montoya v. Cherry Creek Dodge, Inc.,* 708 P.2d 491 (Colo.App.1985).

Although the question whether conduct is sufficiently outrageous is ordinarily a question for the jury, the trial court must first determine whether reasonable persons could differ on the outrageousness issue. *See Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978).

Here, we conclude that Hewitt's allegations are insufficient to establish his claims of outrageous conduct. At most, Hewitt alleges that, on two separate occasions, the bank accepted loan payments from him and then reneged on its promise not to commence foreclosure proceedings against him, and instead commenced such proceedings the very next day. While such conduct, if true, may well be tortious, it does not rise to the level of conduct which may be characterized as "atrocious and utterly intolerable in a civilized community."

Significantly, the complaint contains no separate factual allegations for the outrageous conduct claims which differ from the factual allegations related to Hewitt's other claims, nor does Hewitt allege that he suffered any emotional distress, a requisite for an outrageous conduct claim.

Thus, we conclude that the trial court properly dismissed Hewitt's outrageous conduct claims. *See Rubenstein v. South Denver National Bank,* 762 P.2d 755 (Colo.App. 1988) (affirming trial court's entry of summary judgment on outrageous conduct claim relating to bank's alleged disclosure of confidential information to third party regarding plaintiff's financial status).

## III. Interference with Prospective Business Advantage

Finally, Hewitt maintains that the trial court erred in granting the bank's motion *in limine* to exclude evidence relating to allegations that the bank had orally promised on several occasions to extend the maturity date of his promissory notes, or to delay foreclosures, and then reneged on those promises. We perceive no error.

Inasmuch as the claim for interference with prospective business advantage is a tort claim relating to an oral credit agree-

ment, it is barred under § 38–10–124 for the reasons discussed in part I of this opinion. *See Cole v. Hotz, supra.*

To the extent this claim is not predicated upon an oral credit agreement, we conclude there was no error in the exclusion of such evidence.

■ A trial court's decision to exclude relevant evidence pursuant to CRE 403 will not be reversed on appeal absent an abuse of discretion. *Williamsen v. People,* 735 P.2d 176 (Colo.1987). A court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Milton,* 732 P.2d 1199 (Colo.1987).

■ Here, the trial court excluded evidence concerning allegations that the bank breached agreements or promises to extend the maturity date of plaintiff's promissory notes and/or delay foreclosure proceedings. Such proposed evidence, in our view, was only marginally related to Hewitt's claim that the bank improperly interfered with his efforts to market his property.

Accordingly, we perceive no basis for setting aside the trial court's ruling and ordering a new trial. *See Audio–Visual Systems, Inc. v. Hopper,* 762 P.2d 696 (Colo.App.1988).

The judgment is affirmed.

HUME and JONES, JJ., concur.