25CA0542 Dauwe v Fruitland 04-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0542
Delta County District Court No. 23CV9
Honorable Mary E. Deganhart, Judge

Daniel W. Dauwe,

Plaintiff-Appellant,

v.

Fruitland Irrigation Company,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Tow and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

Daniel W. Dauwe, Pro Se

Overturf McGath & Hull, P.C., Scott A. Neckers, Sarah A. Thomas, Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Daniel W. Dauwe, appeals the district court's entry of judgment dismissing his lawsuit against defendant, Fruitland Irrigation Company (Fruitland).  We affirm.

## I.    Background

¶ 2    Fruitland is a mutual irrigation company[1] that delivers water to its shareholders via an irrigation canal (the ditch).  Fruitland has owned and operated the ditch for over a century.  The ditch has historically irrigated approximately 5,000 acres of surrounding land and predominantly traverses privately owned land, including Dauwe's property that he purchased in September 2020.  It's undisputed that Fruitland holds a prescriptive easement over Dauwe's property to maintain the ditch.  Dauwe has never asserted any right to receive water from the ditch.

¶ 3    The ditch was originally constructed as an earthen, open-air irrigation canal.  Fruitland wanted to improve its irrigation delivery system by piping or lining sections of the ditch that weren't already

---

[1] Mutual irrigation companies "operate on the premise that the company owns the water rights and other property, including ditch easements, and the shareholders have the right to use the water on their lands."  *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.,* 109 P.3d 969, 973 (Colo. 2005).

piped or lined (the project). Thus, in 2014, Fruitland retained an engineering firm, Applegate Group, Inc. (Applegate), to evaluate possible improvements to the ditch and funding sources. It was determined that the project would improve the efficiency of Fruitland's irrigation water delivery and eliminate seepage from the ditch into saline soils. Ultimately, Fruitland received both state and federal funding for the project, which included funding from the Salinity Control Program administered by the Bureau of Reclamation (BOR).

¶ 4     Applegate and Fruitland began the design and permitting process for the project in 2018. As part of that process, the BOR, in conjunction with a private consultant and other state and federal agencies, prepared an environmental assessment in September 2019.

¶ 5     After receiving the necessary permits and approval, Fruitland began construction in late 2019. In May 2022, Fruitland sent landowners affected by construction on their property a letter requesting that the landowners provide information regarding their preferences for disposal of the debris generated from the project's construction. Ed O'Hayre — a neighbor with property adjacent to

2

Dauwe's — responded to the letter and requested that the portion of the ditch that crossed his land be piped rather than lined, and Fruitland accommodated that request.

¶ 6     The construction on O'Hayre's property began in April 2023. And because Fruitland piped the ditch on O'Hayre's property, the project was modified to include, among other things, installation of a concrete headwall at the pipe intake between Dauwe's and O'Hayre's respective properties (intake headwall). Fruitland also installed a rack on the intake headwall to prevent debris, animals, or people from being pulled into the pipe.

¶ 7     The rack is pictured below before a protective "cage" was installed around it.



The Intake Headwall with Just a Rack

¶ 8    Around the same time, Dauwe reached out to Fruitland for the first time to express his concerns about the impact that the project would have on his property and requested a similar accommodation of piping the ditch as had been arranged with O'Hayre. Fruitland communicated that it wouldn't pipe the ditch on Dauwe's property; rather, it would continue with its original plans of lining the ditch.

¶ 9    Dauwe then filed a motion for injunctive relief and sought to enjoin Fruitland from completing the ditch lining work occurring on his property. After a hearing, the court denied Dauwe's request as

moot because Fruitland had already substantially completed the lining work. Subsequently, Dauwe filed an amended complaint in which he asserted twenty-two claims for relief.

¶ 10    Fruitland filed multiple motions to dismiss under C.R.C.P. 12(b)(5) that sought to dismiss twelve of Dauwe's claims.[2] Construing Fruitland's filings as motions for judgment on the pleadings under Rule 12(c), the court dismissed eleven of Dauwe's claims[3] (order of dismissal).

¶ 11    About nine months after the court entered the order of dismissal, Dauwe filed an opposed motion requesting that the court allow him to further amend and supplement his complaint (motion to amend). The court denied Dauwe's motion to amend, reasoning that any further amendment or supplementation would be futile (order denying amendment).

¶ 12    Not long after, Dauwe asserted that Fruitland's discovery responses were deficient and requested the court to hold a hearing

---

[2] Fruitland sought dismissal of claims six, ten, twelve, and fourteen through twenty-two.

[3] The court didn't grant the request to dismiss claim six, which alleged damages under the Clean Water Act (CWA), 33 U.S.C. §§ 1251-1387.

on discovery disputes. After holding a hearing, the court found that (1) Fruitland "had fully and completely complied with discovery requests from [Dauwe]"; (2) "additional documents sought by [Dauwe] [were] not relevant to the remaining claims"; and (3) many of the documents requested by Dauwe were available to him because they were public records (discovery order).

¶ 13 The following week, Fruitland filed a motion for summary judgment regarding Dauwe's eleven remaining claims.[4] Dauwe also filed a motion asking the court to grant summary judgment on claim three of his amended complaint. The court issued a written order granting Fruitland's summary judgment motion and denying Dauwe's (summary judgment order).

¶ 14 Dauwe appeals, arguing the court committed various errors or abused its discretion when it entered the (1) order of dismissal; (2) order denying amendment; (3) discovery order; and (4) summary judgment order. For the reasons discussed below, we affirm the judgment.

---

[4] In its motion for summary judgment, Fruitland requested that claims one through nine, eleven, and thirteen be dismissed.

## II.  Dauwe Abandoned Certain Arguments and Claims on Appeal

¶ 15    Dauwe identifies in his notice of appeal an order from May 2024 in which the court declined to rule on two motions he filed for the determination of a question of law.  Because he makes no argument about it in his opening brief, we deem any argument challenging that order abandoned.  *See In re Marriage of Marson*, 929 P.2d 51, 54 (Colo. App. 1996) (issues identified in the notice of appeal but not addressed in the opening brief are abandoned).

¶ 16    We likewise conclude Dauwe has abandoned claims three (trespass), eight (continuing trespass), thirteen (fraud on the court), and nineteen (civil conspiracy) because he doesn't challenge the court's dismissal of them on appeal.  *See Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 38 (arguments raised in the trial court but not pursued on appeal are deemed abandoned).  Similarly, because Dauwe doesn't challenge the court's denial of his request to supplement his amended complaint with claims for deprivation of property, defamation, and nuisance, we deem those claims abandoned.  *See id.*

### III. The District Court Didn't Have Jurisdiction Over Dauwe's Claim Asserting Violations of the Clean Water Act (CWA)

¶ 17    Dauwe alleges in claim six that Fruitland's actions destroyed a wetland and violated the CWA.[5]  *See generally* 33 U.S.C. §§ 1251-1387.  Specifically, he alleges that, under the Supreme Court's decision in *Sackett v. Environmental Protection Agency*, 598 U.S. 651 (2023), the water conveyed through the ditch is a "[w]ater of the United States" protected by the provisions of the CWA.  And he argues that Fruitland violated federal rules and regulations implementing the CWA when it "filled a jurisdictional wetland with dirt and/or concrete."

¶ 18    Apparently recognizing a potential jurisdictional issue, Dauwe asserts in his complaint that citizen suits brought under 33 U.S.C. § 1365 aren't required to be brought in federal court.  The court didn't address whether it had jurisdiction to consider the merits of claim six.  Rather, the court addressed — and rejected — the merits of claim six in its summary judgment order.

---

[5] Dauwe doesn't specify which section of the CWA Fruitland purportedly violated.

¶ 19    Neither party addresses in their briefing whether the district court had subject matter jurisdiction to consider the merits of claim six. But we can consider on our own whether a district court had subject matter jurisdiction. *See Zook v. El Paso County*, 2021 COA 72, ¶ 8 (subject matter jurisdiction can be raised at any time and upon a court's own motion).

¶ 20    Contrary to Dauwe's assertion otherwise, citizen suits under the CWA must be brought in federal court. Indeed, 33 U.S.C. § 1365(a) explicitly provides that "[t]he district courts shall have jurisdiction." The statute's reference to "district courts" means *federal* district courts, not state district courts. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 173 (2000) ("Congress authorized the federal district courts to entertain Clean Water Act suits initiated by 'a person or persons having an interest which is or may be adversely affected.'" (quoting 33 U.S.C. § 1365(a), (g))); *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1135 (10th Cir. 2005) (noting that the CWA confers jurisdiction on the *federal courts* to hear citizen suits brought alleging violations of the CWA). Thus, we conclude that the court

erred by reaching the merits of claim six because claims alleging violations of the CWA must be brought in federal court.

¶ 21 Nevertheless, we can affirm the court's ruling on any record-supported basis. *See Neher v. Neher*, 2015 COA 103, ¶ 33. The court dismissed claim six with prejudice. And because § 1365(a) is an insurmountable barrier to a *state* district court exercising jurisdiction over the allegations in claim six, the court's dismissal of that claim with prejudice was appropriate. *See Woo v. El Paso Cnty. Sheriff's Off.*, 2020 COA 134, ¶ 30, *aff'd on other grounds*, 2022 CO 56.

### IV. The Court Properly Dismissed Claims Ten, Twelve, Eighteen, and Twenty Through Twenty-Two Under C.R.C.P. 12(c)

¶ 22 We review de novo whether a court properly granted a motion for judgment on the pleadings under C.R.C.P. 12(c). *Brown v. Long Romero*, 2021 CO 67, ¶ 17. "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *City & County of Denver v. Qwest Corp.*, 18 P.3d 748, 754 (Colo. 2001).

¶ 23 "We evaluate a [motion for] judgment on the pleadings the same as we would evaluate a motion to dismiss under Rule

12(b)(5)," *Spectrum Ret. Cmties., LLC v. Cont'l Cas. Co.*, 2025 COA 57, ¶ 14 (*cert. granted* Jan. 20, 2026), meaning we "must construe the allegations of the pleadings strictly against the movant, must consider the allegations of the opposing part[y's] pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings," *Brown*, ¶ 17 (citation omitted).

¶ 24    Furthermore, a plaintiff's allegations must assert a plausible claim for relief. *See Warne v. Hall*, 2016 CO 50, ¶ 24. A claim is plausible when its factual allegations raise a right to relief above the speculative level. *See Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA 148, ¶ 50. Thus, a plausible claim for relief must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* at ¶ 51 (citation omitted). However, we aren't required to accept as true legal conclusions that are couched as factual allegations. *Fry v. Lee*, 2013 COA 100, ¶ 17.

### A.    Claim Ten: Negligence in Design

¶ 25    Dauwe alleges that Fruitland "failed to install a cage around the intake [headwall]," which he asserts "poses a threat to human

11

safety." He concedes that Fruitland had installed the cage by the time he filed his amended complaint. However, because Fruitland didn't install the cage in the timeframe he desired, he argues Fruitland's behavior was in "bad faith," thereby warranting exemplary damages.

¶ 26    The "cage" is pictured below.



The Intake Headwall with a Rack and a Cage

¶ 27    "In order to establish a prima facie case for negligence, a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that

the defendant's breach caused the plaintiff's injury." *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002).  If a plaintiff fails to establish any one of these elements, he can't prevail on his negligence claim.  *See Leaf v. Beihoffer*, 2014 COA 117, ¶ 12.  The duty of care for a ditch owner is "ordinary care, such as a man of average prudence and intelligence would use, under like circumstances, to protect his own property."  *Oliver v. Amity Mut. Irrigation Co.*, 994 P.2d 495, 497 (Colo. App. 1999) (quoting *City of Boulder v. Fowler*, 18 P. 337, 337 (Colo. 1888)).

¶ 28    Accepting Dauwe's allegations as true, they don't plausibly state a claim for negligence.  Dauwe communicated his concerns about the potential safety risk the intake headwall created on his property and asked Fruitland to install a cage around it.  And Dauwe concedes that Fruitland installed a cage around the intake headwall as he requested.  But he doesn't allege Fruitland's delayed installation of the cage caused him any injuries.  And "[a]bsent injury, there is no action."  *Farmers Grp., Inc. v. Trimble*, 658 P.2d 1370, 1374 (Colo. App. 1982), *aff'd*, 691 P.2d 1138 (Colo. 1984).

### B.    Claim Twelve: Reduction in Property Value

¶ 29    Dauwe alleges that the project has caused a reduction in his property value.  But reduction in property value isn't a stand-alone claim; rather, it's a remedy for damages caused by trespass — meaning Dauwe must first establish that a trespass has occurred. *Trask v. Nozisko*, 134 P.3d 544, 554 (Colo. App. 2006) (recoverable damages for trespass claims can include diminution of market value, costs of restoration, and loss of use of the property).  Because Dauwe alleges trespass in claims one, two, four, and seven, any resulting damages must be addressed under those claims.  Thus, we agree with the district court that claim twelve was duplicative of his other trespass-based claims.  *See Barham v. Scalia*, 928 P.2d 1381, 1387 (Colo. App. 1996) (a court may dismiss duplicative claims).

### C.    Claim Eighteen: Fraudulent Concealment

¶ 30    Dauwe's fraudulent concealment claim is premised on his allegations that certain conservation easements "unequivocally" prohibited the project and Fruitland concealed from the BOR its knowledge of such easements.  He further alleges that Fruitland's

14

"false representation by omission induced the [BOR] to approve the award of the grant," which enabled the destruction of his property.

¶ 31　To establish a claim for fraudulent concealment, a plaintiff must prove, among other things, that the defendant had a duty to, but didn't, disclose material information to the plaintiff. *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 56.

¶ 32　Here, Dauwe was aware of the conservation easements. Indeed, in support of claim eighteen, he provides the county recorder reception numbers for the easements, thereby demonstrating that the easements were publicly recorded. *See* § 30-10-409(2), C.R.S. 2025 (a document filed with the county clerk and recorder is endorsed with a reception number).

¶ 33　The proper recording of a document evidencing an encumbrance — like a conservation easement — provides constructive notice to everyone that such encumbrance exists. *See Meyer v. Haskett*, 251 P.3d 1287, 1293 (Colo. App. 2010) ("When an instrument regarding property is properly recorded, constructive notice is provided to all."). And a party has no duty to disclose a

public document that is equally available to all parties. *See Averyt v. Wal-Mart Stores, Inc.*, 265 P.3d 456, 459 (Colo. 2011).

¶ 34 Thus, even assuming Dauwe has standing to assert a claim based on Fruitland's alleged failure to disclose the easements to the BOR rather than to him, we conclude that Fruitland had no duty to disclose the easements because the BOR had constructive notice of them. *See Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 919 (Colo. App. 1991) (rejecting plaintiffs' claim for fraudulent concealment when plaintiffs, based on publicly recorded documents, had constructive notice of material facts defendants allegedly failed to disclose). Accordingly, we conclude that Dauwe fails to allege a plausible claim for fraudulent concealment.

## D. Claim Twenty: Abuse of Process

¶ 35 Dauwe's abuse of process claim is premised on his assertion that Fruitland failed to follow a required legal process.

¶ 36 As best we understand, Dauwe alleges that under *Roaring Fork Club, L.P., v. St. Jude's Co.*, 36 P.3d 1229 (Colo. 2001), Fruitland was required to either obtain his consent or obtain a declaratory judgment before making any modifications to the ditch. In *Roaring Fork Club*, the supreme court held that the owner of property

16

burdened by a ditch easement may not alter the easement without first obtaining the easement holder's consent or a declaratory judgment. *Id.* at 1231. Dauwe argues that Fruitland's failure to follow the "procedure" in *Roaring Fork Club* constitutes "negative abuse of process."

¶ 37    To prevail on an abuse of process claim, a plaintiff must prove (1) an ulterior purpose for the use of a judicial proceeding; (2) willful use of a legal proceeding in an improper manner; and (3) resulting damage. *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006). The first two elements require that a defendant must *use* a judicial process or proceeding in order for a plaintiff to have a cognizable claim for abuse of process. *See id.*; *see also Moore v. W. Forge Corp.*, 192 P.3d 427, 438 (Colo. App. 2007) (noting that use of a judicial process is fundamental to establishing an abuse of process claim). Thus, "negative abuse of process" isn't a cognizable claim. And in any event, *Roaring Fork Club* is factually distinguishable because Dauwe isn't the easement holder — Fruitland is. Therefore, accepting Dauwe's allegations as true, he hasn't alleged any facts demonstrating that Fruitland abused a judicial proceeding.

17

## E. Claim Twenty-One: Violation of Section 37-84-119, C.R.S. 2025

¶ 38 Under section 37-84-119, irrigation ditch owners must ensure irrigation ditches are maintained "in good order and repair, ready to receive water by April 1 in each year" and must deliver water "to persons having paid-up shares or who have rights to the use of water." Dauwe alleges that Fruitland's lining of the ditch after April 1 when the ditch is supposed to be operational is "illegal and ill-advised."[6]

¶ 39 "Standing is a threshold issue that must be satisfied in order for a court to decide a case on the merits." *Barber v. Ritter*, 196 P.3d 238, 245 (Colo. 2008). To establish standing, a plaintiff must demonstrate that he has suffered an injury in fact to a legally protected right. *City of Greenwood Village v. Petitioners for the Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000) ("[P]arties

---

[6] Dauwe also argues that section 37-84-119, C.R.S. 2025, protects the public and adjacent landowners in addition to shareholders, and he references section 37-80-102, C.R.S. 2025, and section 37-87-108, C.R.S. 2025, in support. Because he doesn't develop this argument, we don't consider it. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).

actually protected by a statute or constitutional provision are generally best situated to vindicate their own rights.").

¶ 40    Thus, to have standing to bring a claim under section 37-84-119, a plaintiff must be a shareholder or someone with rights to use the water.  Although we can broadly construe Dauwe's amended complaint because he is self-represented, *Jones v. Williams*, 2019 CO 61, ¶ 5, we won't rewrite it for him, *Minshall v. Johnston*, 2018 COA 44, ¶ 21.  And even broadly construing Dauwe's amended complaint, Dauwe has alleged neither that he is a shareholder or other person entitled to receive water from the ditch nor that there was a delay in the delivery of water from the ditch.  *See City of Greenwood Village*, 3 P.3d at 437.  He therefore lacks standing to bring a claim under section 37-84-119.

F.    Claim Twenty-Two: Outrageous Conduct

¶ 41    To prevail on an outrageous conduct claim, a plaintiff must prove that the defendant (1) engaged in extreme and outrageous conduct; (2) did so recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) caused the plaintiff severe emotional distress.  *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 990 (Colo. App. 2011).  "Outrageous conduct" is that which is

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted). A defendant isn't liable for "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citation omitted).

¶ 42    Dauwe alleges that Fruitland's "extreme actions such as multiple instances of serious misrepresentation, fraud, gross violation of the easement, abuse of process, and the wanton violation of federal laws protecting [his property]" have caused him "grave emotional distress." He also asserts that he's been threatened by attorneys, lied to, and called a frivolous litigant.

¶ 43    Thus, the primary factual allegations supporting this claim consist of his allegations that Fruitland "grossly" violated the easement and federal laws, and that its attorneys threatened him, lied to him, and called him frivolous. Dauwe also attempts to support his outrageous conduct claim by referencing other claims based on Fruitland's same conduct — which is insufficient. *See Hewitt v. Pitkin Cnty. Bank & Tr. Co.*, 931 P.2d 456, 459 (Colo. App. 1995) (affirming trial court's dismissal of outrageous conduct claim

20

unsupported by independent factual allegations).  And, even viewed in the light most favorable to Dauwe, his remaining allegations don't rise to the level of the extreme, atrocious, or utterly intolerable type of conduct necessary to prevail on an outrageous conduct claim.  *Compare Danyew v. Phelps*, 676 P.2d 707, 709 (Colo. App. 1983) (concluding that the wrongful eviction of a tenant without notice while the tenant was hospitalized supported a claim for outrageous conduct), *with Zueger v. Goss*, 2014 COA 61, ¶ 38 (concluding that defendant's disparaging statements about plaintiffs on the internet didn't constitute outrageous conduct).

## V.    We Affirm the Court's Dismissal of Claims Fourteen Through Seventeen on Alternate Grounds

¶ 44     In claims fourteen through seventeen (collectively, fraudulent misrepresentation claims), Dauwe alleges that Fruitland made fraudulent misrepresentations to the BOR in the environmental assessment.  Specifically, Dauwe asserts that Fruitland provided the BOR with false information about "salinity reduction" (claim fourteen), the project's potential impact on wetlands (claim fifteen), and Fruitland's access rights under the prescriptive easement (claims sixteen and seventeen).  And he asserts that these

fraudulent misrepresentations induced the BOR to award Fruitland funds for the project, which in turn enabled the destruction of his property.

¶ 45    A plaintiff establishes a claim for fraudulent misrepresentation by proving that (1) the defendant fraudulently misrepresented a material fact to the plaintiff; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had a right to rely on or was justified in relying on the misrepresentation; and (4) the plaintiff's reliance resulted in damages. *Barnes v. State Farm Mut. Auto. Ins. Co.*, 2021 COA 89, ¶ 28. A fraudulent representation made to the class of persons that the defendant intended to influence, and of which the plaintiff is a part, may be sufficient to sustain a claim for fraudulent misrepresentation. *Mead & Mount Constr. Co. v. Fox Metal Indus., Inc.*, 511 P.2d 509, 510 (Colo. App. 1973).

¶ 46    The court dismissed the fraudulent misrepresentation claims[7] because it concluded that Dauwe lacked standing to bring those claims on behalf of the BOR.  But the environmental assessment says it was provided to private landowners that would be potentially impacted by the project.  Thus, we draw a reasonable inference in Dauwe's favor that he was a member of the class that the information in the environmental assessment was intended to influence.  *See id.*

¶ 47    Nevertheless, we affirm the court's judgment because we conclude that Dauwe's fraudulent misrepresentation claims were not otherwise plausibly pleaded.  *See Neher,* ¶ 33; *Ice v. Benedict Nuclear Pharms., Inc.,* 797 P.2d 757, 760 (Colo. App. 1990) (if a plaintiff fails to prove one of the elements of fraudulent misrepresentation, then the claim necessarily fails).

---

[7] In the order of dismissal, the court stated that it was dismissing claims seventeen and eighteen and characterized those claims as the claims in which Dauwe alleged that Fruitland made fraudulent misrepresentations regarding its rights to access landowners' property under the easement.  However, Dauwe made those allegations in claims sixteen and seventeen.  This error doesn't impact our analysis.

¶ 48    We initially note that the environmental assessment was created by a private consultant on the BOR's behalf, rather than by Fruitland.  But even accepting as true Dauwe's assertion that Fruitland, in its application for grant funding, provided false information to the BOR, which in turn led the private consultant to create a "deceptive" environmental assessment upon which the BOR relied in deciding to fund the project, Dauwe doesn't allege that *he* relied on the environmental assessment in any way.  On the contrary, he *only* asserts that the BOR relied on the environmental assessment.  Said differently, Dauwe doesn't allege any facts from which we can reasonably infer that *his own reliance* on the environmental assessment resulted in damages to his property.  *See Barnes*, ¶ 28.  His fraudulent misrepresentation claims therefore fail.

## VI.   The Court Properly Denied Dauwe's Request to Amend or Supplement His Amended Complaint

### A.   Applicable Legal Principles

¶ 49    C.R.C.P. 15(a) requires parties to obtain court authorization to amend pleadings in certain instances.  "[T]rial courts are encouraged to look favorably on requests to amend pleadings."  *Am.*

24

*C.L. Union of Colo. v. Whitman*, 159 P.3d 707, 712 (Colo. App. 2006); *see* C.R.C.P. 15(a) (leave to amend pleadings "shall be freely given when justice so requires"). But if a proposed amendment would be futile, a court may deny the request for leave to amend. *Whitman*, 159 P.3d at 712. A proposed amendment to a complaint is futile if it "merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Id.* at 712-13.

¶ 50 Rule 15(d) concerns supplemental pleadings and permits a party to request leave of the court to supplement a pleading based on events that occurred after the date of the pleading. *See Eagle River Mobile Home Park, Ltd. v. Dist. Ct.*, 647 P.2d 660, 662 n.3 (Colo. 1982) ("Amended and supplemental pleadings differ in that the former relate to matters occurring before the filing of the original pleading and entirely replace the original pleading, while the latter concern events subsequent to the original pleading and constitute only additions to the earlier pleading.").

¶ 51 We review de novo a district court's determination that a party's request to amend or supplement a pleading would be futile

because it wouldn't overcome a motion to dismiss. *Gandy v. Williams*, 2019 COA 118, ¶ 14.

### B.    Analysis

#### 1.    Proposed Amendment of Fraud on the Court Claim

¶ 52    In his amended complaint, Dauwe asserted a claim alleging that Fruitland had committed "fraud on the court" by making false statements to the court regarding the extent of the project's completion, which led the court to erroneously deny his request for an injunction. Dauwe asked the court for authorization to "convert" or amend his fraud on the court claim to a claim for outrageous conduct. The court denied his request.

¶ 53    The court dismissed Dauwe's fraud on the court claim before he asked to amend it. As already noted in Part II, he doesn't challenge the court's dismissal of that claim on appeal. And while providing false information to the court is unethical and can subject a party to sanctions, Dauwe doesn't cite, and we can't find, any authority to support the proposition that doing so is sufficient to support an outrageous conduct claim. *See Reigel*, 292 P.3d at 990. Accordingly, we conclude that Dauwe's attempt to amend his fraud

on the court claim by converting it to an outrageous conduct claim was futile.  *See Whitman*, 159 P.3d at 712-13.

2.   Proposed Supplemental Outrageous Conduct Claim

¶ 54   Dauwe asked to "amend" his dismissed abuse of process claim by instead asserting a claim for outrageous conduct against Fruitland.  His request was based on his contention that Fruitland's attorney lied to the court about the applicability of *Roaring Fork Club* in its response to one of his motions for determination of a question of law.  Because these circumstances occurred after he filed his amended complaint, we construe Dauwe's argument as an attempt to supplement his amended complaint with an additional outrageous conduct claim.  *See Eagle River*, 647 P.2d at 662 n.3.

¶ 55   Dauwe argues that the alleged conduct of Fruitland's attorney is "outrageous" and unethical.  We conclude Dauwe's allegations are insufficient to support an outrageous conduct claim for two reasons.  First, as already discussed, the type of conduct sufficient to support an outrageous conduct claim is exceedingly rare.  *See Reigel*, 292 P.3d at 990.  And generally, an attorney's alleged misconduct that violates the Colorado Rules of Professional Conduct isn't, without more, a basis for civil liability.  *See Moye*

*White LLP v. Beren*, 2013 COA 89, ¶ 31. Second, as also discussed, the holding of *Roaring Fork Club* is inapplicable to the circumstances of this case. Thus, Dauwe's request to supplement his amended complaint with an additional outrageous conduct claim was futile. *See Whitman*, 159 P.3d at 712-13.

### 3. Proposed Supplemental Abuse of Process Claim

¶ 56 Fruitland requested its costs and attorney fees under section 13-17-102, C.R.S. 2025, and C.R.C.P. 11 for defending against the claims the court dismissed in its order of dismissal.

¶ 57 Dauwe asserts that as a self-represented litigant, he can't be sanctioned under section 13-17-102 or Rule 11 for making frivolous claims. Consequently, he sought to add a supplemental abuse of process claim to his amended complaint in response to Fruitland's request for fees and costs.

¶ 58 Section 13-17-102(6) authorizes a court to award attorney fees if it finds that a self-represented litigant "clearly knew or reasonably should have known" that all or part of their litigation was "substantially frivolous, substantially groundless, or substantially vexatious."

28

¶ 59    Rule 11(a) requires attorneys and self-represented parties to sign pleadings.  The rule provides that an attorney's signature certifies that the pleading is grounded in fact, warranted by existing law or a good faith legal argument, and not filed for any improper purpose.  C.R.C.P. 11(a).  It also allows a court to appropriately sanction a party if they sign a pleading in violation of the rule, including by ordering a party to pay another party "the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee."  C.R.C.P. 11(a).  And while Rule 11 expressly addresses an attorney's signature on a pleading serving as a certification regarding the pleading's appropriateness, "[a] pro se litigant who chooses to rely upon his own understanding of legal principles and procedures is required to follow the same procedural rules as those who are qualified to practice law and must be prepared to accept the consequences of his mistakes and errors."  *Al-Hamim v. Star Hearthstone, LLC*, 2024 COA 128, ¶ 34 (quoting *Rosenberg v. Grady*, 843 P.2d 25, 26 (Colo. App. 1992)).

¶ 60    As discussed in Part IV.D, an abuse of process claim requires a plaintiff to demonstrate he suffered damages as a result of the

29

defendant's willful use of a legal proceeding in an improper manner for an ulterior purpose. But Dauwe mischaracterizes the argument supporting Fruitland's request and, in any event, doesn't allege he suffered any damages as a result of Fruitland's request. Dauwe's proposed supplemental claim for abuse of process therefore lacks both the legal and factual support necessary to state a plausible claim. The court thus properly denied it as futile. *See Whitman,* 159 P.3d at 712-13.

## VII. Claims One, Two, Four, Five, Seven, Nine, and Eleven Were Properly Dismissed Under C.R.C.P. 56

¶ 61    We review de novo a district court's ruling on a motion for summary judgment and apply the same standards as the district court. *City of Fort Collins v. Colo. Oil & Gas Ass'n,* 2016 CO 28, ¶ 9. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at ¶ 8; *see* C.R.C.P. 56(c). It's the moving party's burden to establish the nonexistence of a genuine issue of material fact, and we grant the nonmoving party the benefit of all favorable inferences reasonably drawn from the facts. *Univ. of Denv. v. Doe,* 2024 CO 27, ¶ 8.

¶ 62    "Expert affidavits may be used to support or resist a motion for summary judgment." *White v. Jungbauer*, 128 P.3d 263, 264 (Colo. App. 2005). When a nonmoving party responds to a properly supported motion for summary judgment, the nonmoving party may not simply rest on their allegations or denials of the opposing party's pleadings but must provide specific facts demonstrating a genuine issue for trial. *City of Fort Collins*, ¶ 8; *see* C.R.C.P. 56(e); *see also White*, 128 P.3d at 264 ("[A]ffidavits containing mere conclusions are insufficient to satisfy the burden of showing the existence or absence of a genuine issue of material fact.").

## A.    Claims One, Two, Four, and Seven: Trespass-Based Claims

¶ 63    Dauwe's trespass-based claims allege that Fruitland exceeded the easement's scope by relocating the ditch (claim one), widening it (claim two), expanding the easement boundaries (claim four), and destroying trees and vegetation "far beyond the historical easement boundary and beyond what was required for the project" (claim seven). *See Trask*, 134 P.3d at 554 (the tort of "trespass" consists of a physical intrusion upon another's property without proper permission from the person legally entitled to possession of that property).

31

¶ 64    In its motion for summary judgment, Fruitland argued that

(1) it hadn't relocated the ditch or expanded the extent of the

easement's boundaries and (2) it can't trespass within its own

easement when it does work that is reasonable and necessary to

operate and maintain the ditch.

¶ 65    Fruitland presented multiple documents in support of its

motion for summary judgment. Among them were an affidavit from

Craig Ullman, Applegate's president and senior water resource

engineer, and an associated report authored by Ullman. Ullman

said the following in his affidavit:

- He had been involved with the project since 2014.

- Applegate used aerial survey data to design the project so
  that the improved ditch didn't deviate from the existing
  ditch.

- The ditch wasn't relocated or widened during the project.

- The project was completed in an area of the easement
  that was reasonable and necessary for the ongoing
  operation and maintenance of the ditch.

- "Vegetation and trees were removed from the area
  immediately adjacent to the [d]itch as part of the

32

[p]roject. All trees and vegetation were within Fruitland's easement in an area that was reasonable and necessary for the [p]roject and the ongoing operation and maintenance of the [d]itch."

¶ 66 Dauwe filed a response to the motion for summary judgment. He argued that the project exceeded the scope of the prescriptive easement and asserted, "[Fruitland] can't move the ditch [and] [Fruitland] can't increase the width of the ditch." He submitted an affidavit in support of his response, in which he said the following:

- He used Google Earth photos from 2019 and 2024 to compare the location of the old ditch with the location of the new ditch, and the new ditch's location deviated several feet from the old ditch's location.

- The new ditch isn't in the same alignment as the old ditch.

- The width of the ditch at ground level is twelve feet wide.

His affidavit didn't address the removal of trees or other vegetation.

¶ 67 The court granted summary judgment on the trespass-based claims, concluding that there was no genuine issue of material fact because Dauwe hadn't explained how any of the modifications to

33

the ditch exceeded the scope of the prescriptive easement. In so concluding, the court noted that, as the owner of the prescriptive easement, Fruitland had the right to modify the ditch so long as any modifications were reasonably consistent with the scope of the easement and didn't unreasonably damage Dauwe's property.

¶ 68 On appeal, Dauwe essentially contends that, because the parties disagreed on the dimensions of the ditch — specifically its width before and after the project — there were genuine disputes regarding the material facts. Dauwe contends that Fruitland "admitted" that the "new ditch was [twelve] feet across," in contrast to his own measurements indicating that the "width of the original ditch on his property was [six] to [eight] feet across." And he argues, "For a prescriptive easement[,] the width of the ditch itself is the sole rigid constraint; it must be [the] same as constructed." Dauwe also asserts — without citing any authority in support — that Fruitland was required to restore the trees and vegetation after the completion of the project.

¶ 69 We aren't persuaded.

¶ 70 A prescriptive easement is a "nonexclusive right to use the land of another for a specified purpose" that arises out of adverse

use of the land for that purpose for a minimum of eighteen years. *LR Smith Invs., LLC v. Butler*, 2014 COA 170, ¶ 14. It's an independent property interest the scope of which is "fixed by the use through which it was created." *Wright v. Horse Creek Ranches*, 697 P.2d 384, 387-88 (Colo. 1985) (quoting Restatement (First) of Prop. § 477 (A.L.I. 1944)). Unlike an easement expressly granted by conveyance in a deed or other document, a prescriptive easement is not necessarily confined to a specific boundary. *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 48; *see also Clinger v. Hartshorn*, 89 P.3d 462, 467 (Colo. App. 2003) ("[T]he use under which a prescriptive interest arises determines [only] the general outlines rather than the minute details of the interest." (quoting Restatement (First) of Prop. § 477 cmt. b.)).

¶ 71 An owner of a water right is entitled to a right-of-way through property that lies "between the point of diversion and point of use . . . for the purpose of transporting water for beneficial use in accordance with said water right." § 37-86-102, C.R.S. 2025. The right-of-way includes the right to "operate, clean, maintain, repair, and replace the ditch and appurtenant structures, to improve the efficiency of the ditch, including by lining or piping the ditch, and to

enter onto the burdened property . . . for all reasonable and necessary purposes related to the ditch." § 37-86-103, C.R.S. 2025.[8]  These rights extend to the bed of the ditch and include sufficient ground on either side of the ditch to ensure it operates properly under the circumstances.  *Shrull v. Rapasardi,* 517 P.2d 860, 862 (Colo. App. 1973); *see also Osborn & Caywood Ditch Co. v. Green,* 673 P.2d 380, 382 (Colo. App. 1983) ("[T]he dimension of the access right to maintain the ditch is that which is reasonably necessary.").

¶ 72    In support of his argument that the ditch has been widened, in addition to submitting an affidavit, Dauwe referenced exhibits submitted to the court before the preliminary injunction hearing. But the record refutes his argument.

¶ 73    Before the preliminary injunction hearing, Fruitland submitted to the court a copy of the historical map and filing statement (map and statement) for the ditch.  The map and statement indicate that Fruitland established the ditch as part of a larger project that

---

[8] The General Assembly significantly amended section 37-86-103, C.R.S. 2025, in 2019, which was before Fruitland began its improvement project.  *See* Ch. 54, sec. 1, § 37-86-103, 2019 Colo. Sess. Laws 190.

included creating a nearby reservoir. According to the map and statement, in the early 1900s, a portion of the ditch measured twelve feet wide, while other portions of the ditch were impacted by "varied topographical conditions necessitating various changes in grade and cross section." As Fruitland's development of the ditch and associated reservoir continued, it was anticipated that Fruitland would make "extensions, improvements, and enlargements" of the ditch as necessary to meet its shareholders' expectations for irrigating the surrounding lands.

¶ 74    Dauwe doesn't dispute the information contained in the map and statement. Moreover, he doesn't dispute that Fruitland holds a prescriptive easement over his property for the purpose of delivering irrigation water or that Fruitland continues to use the easement for that purpose. He also doesn't dispute Ullman's statement, made in his capacity as a water resource engineer involved with the project, that the modifications to the ditch, including any removal of vegetation, were reasonable and necessary for the ongoing operation and maintenance of the ditch. Ullman's statement is supported by his report, which indicated that (1) removing overgrown vegetation was maintenance necessary to restore the ditch's water flow

37

capacity and (2) lining the ditch with concrete would inhibit future vegetation growth along the ditch while minimizing the ditch's width.  Finally, Dauwe didn't argue that the new width was greater than twelve feet and didn't contest that twelve feet was within the prescriptive easement, which was included in the map and statement.

¶ 75    And, contrary to Dauwe's assertion otherwise, Fruitland had the authority under section 37-86-103 to pipe the ditch as part of its efforts to improve the ditch's efficiency.  *See Baker v. Safadi-Chamberlain*, 2025 COA 63, ¶ 4 ("[S]ection 37-86-103 grants the right to pipe a ditch only when doing so would improve the ditch's efficiency.").

¶ 76    We recognize that Dauwe didn't have the benefit of *Baker* when he filed his response to the motion for summary judgment. However, Colorado case law has long recognized that an irrigation ditch owner's rights pursuant to a prescriptive easement include "all that is reasonably necessary to the convenient and proper use and maintenance of the ditch."  *Neville v. Loudon Irrigating Canal & Reservoir Co.*, 242 P. 1002, 1002 (Colo. 1926) (citation modified).

¶ 77 In sum, even giving Dauwe the benefit of all reasonable inferences that can be drawn from the undisputed facts, Dauwe hasn't demonstrated that Fruitland exceeded the nature and purpose of the easement by completing the project and, in turn, committed trespass. Rather, Dauwe merely rests on his unsupported allegations and conclusions, which is insufficient to satisfy his burden as Fruitland has demonstrated that there are no disputed issues of *material* fact. *See City of Fort Collins*, ¶ 9; *White*, 128 P.3d at 264; C.R.C.P. 56(e). Thus, the court didn't err by granting summary judgment on his trespass-based claims.

B. Claim Five: Dispossession of Property Without Compensation

¶ 78 Dauwe alleges that Fruitland's lining of the ditch violated article XVI, section 7 of the Colorado Constitution because it resulted in his property being taken without just compensation. He asserts that Fruitland can't rely on section 37-86-103 for the project because "a Colorado statute cannot displace the Colorado Constitution." And he argues that under the holding of *Roaring Fork Club*, the owner of any "estate seeking to alter an easement" must first obtain the other estate's consent or a declaratory judgment.

¶ 79    Again, we aren't persuaded.

¶ 80    We first reject Dauwe's reliance on *Roaring Fork Club* because it is, once again, unavailing. As discussed in Part IV.D, Fruitland and Dauwe aren't similarly situated to the parties in *Roaring Fork Club*. Put simply, Dauwe's assertion that Fruitland is an owner of an "estate seeking to alter an easement" is incorrect. Rather, Fruitland's prescriptive easement is *an independent property interest*. *Wright*, 697 P.2d at 387.

¶ 81    We acknowledge that article XVI, section 7 says in relevant part that corporations shall have a right-of-way across private property "for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands . . . upon payment of just compensation." But, as we concluded in Part VII.A, Fruitland didn't exceed the scope of its prescriptive easement. And because the factual basis in support of this claim is the same as the factual basis underlying his trespass-based claims, Dauwe hasn't demonstrated a genuine issue of material fact sufficient to survive a motion for summary judgment. We therefore reject his assertion that the project resulted in a "taking" that requires him to be compensated.

### C.   Claims Nine and Eleven: Negligence-Based Claims

¶ 82    In claim nine, Dauwe alleges that the intake headwall "was deficiently designed and caused flooding on [his] property," which "will take years before it returns to its natural state." Dauwe alleges "negligence in operation" in claim eleven. Specifically, he alleges that organic debris like tree limbs, twigs, and algae accumulate on the intake headwall rack, which Fruitland then removes and leaves on his property. He asserts that the debris "should be removed from [his] property because it is foreign to the property."

¶ 83    In Part IV.A, we set forth the elements Dauwe must establish to prove Fruitland was negligent. *See HealthONE*, 50 P.3d at 888; *see also Hitti v. Montezuma Valley Irrigation Co.*, 599 P.2d 918, 921 (Colo. App. 1979) ("[A] ditch owner is liable for any injuries caused to property from the overflow of water from a ditch which results directly or indirectly from negligence in the use and repair of the ditch.").

¶ 84    Regarding claim nine, even assuming that Dauwe's property experienced flooding, Dauwe hasn't established that Fruitland breached a duty, which in turn caused flooding that damaged his property. Conversely, Fruitland — via Ullman's affidavit — affirmed

41

that "[t]he [p]roject was designed within the standard of care for canal operators in Colorado." And Dauwe hasn't set forth any facts refuting this in his response or opposing affidavit. Rather, Dauwe makes the conclusory assertion that "[i]t does not take any special knowledge or expert witness for a lay person to understand damages from flooding." Dauwe also references photos that he previously submitted to the court[9] that he alleges show his property after the flooding, but those photos don't establish that his property was damaged by any flooding or that the intake headwall was "deficiently designed."

¶ 85    Likewise, with respect to claim eleven, even assuming that organic debris accumulates on the intake headwall rack, which Fruitland then clears and leaves on Dauwe's property, Dauwe hasn't set forth any facts demonstrating that Fruitland breached a legal duty that caused him to suffer damage.

¶ 86    Thus, Dauwe hasn't alleged facts sufficient to demonstrate that there is a genuine issue of material fact regarding whether

---

[9] Dauwe attached the photos to his reply in support of his motion to amend and supplement his amended complaint. He didn't mention flooding in his reply when referencing the photos; instead, he used the photos to establish the timeline of Fruitland's lining of the ditch.

42

Fruitland negligently designed or operated the intake headwall.  The court therefore properly granted summary judgment on Dauwe's claims nine and eleven.  *See Leaf*, ¶ 12.

## VIII.  The Court Didn't Abuse its Discretion by Denying Dauwe's Discovery Requests

### A.  Applicable Legal Principles

¶ 87   "Although the scope of allowable discovery under C.R.C.P. 26 is broad, it is not unlimited."  *Garcia v. Centura Health Corp.*, 2025 CO 15, ¶ 21.  And Rule 26(c) allows a court to protect a party from being compelled to produce certain discovery if complying with the discovery request would cause that party undue burden or expense.

¶ 88   We review a district court's discovery orders for an abuse of discretion.  *Garcia*, ¶ 24.  A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law.  *Rains v. Barber*, 2018 CO 61, ¶ 8 (citation omitted).

### B.  Analysis

¶ 89   Dauwe argues that Fruitland should have been required to produce documents in response to the following request for production: "Provide all records, data, or information relating in any

way to the construction, maintenance, operation, and repair of the canal, over its entire history." Fruitland objected to the request for production and asserted that the request was "overly broad, unduly burdensome, oppressive, and/or vague." Fruitland further asserted that (1) its construction, operation, and maintenance of the ditch at locations other than on Dauwe's property weren't relevant; and (2) the expense of locating and reviewing 120 years of records outweighed any likely benefit.

¶ 90 Dauwe argues that he "should be allowed to review those records," and "[w]hat the judge says about 'discovery is not required for public documents' is absurd." Absurd or not, the supreme court has held that, because public documents are equally available to both parties, Rule 26 doesn't require production of them. *Averyt*, 265 P.3d at 460-61. And the district court is bound by that determination, as are we. *See Roane v. Archuleta*, 2022 COA 143, ¶ 16 (lower courts are bound by the rule as expressed by our supreme court), *aff'd*, 2024 CO 74. Because Dauwe doesn't otherwise explain how he believes the court abused its discretion by denying his discovery request, we decline to consider his argument

44

further.  *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).

## IX.  Other Issues

¶ 91  Finally, we decline Dauwe's request that we publish this opinion to "repudiate" *Ute Water Conservancy District v. Fontanari*, 2022 COA 125M.  We don't issue advisory opinions.  *See San Juan Hut Sys., Inc. v. Bd. of Cnty. Comm'rs*, 2023 COA 10, ¶ 50.

## X.  Disposition

¶ 92  The judgment is affirmed.

JUDGE TOW and JUDGE LUM concur.